**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Howard D. PHILLIPS,
Defendant–Appellant.**

**No. 87–2576.**

United States Court of Appeals,
Seventh Circuit.

Argued April 7, 1988.

Decided Aug. 16, 1988.

Rehearing and Rehearing En Banc
Denied Oct. 14, 1988.

**274**

Michael L. Chernin, Milwaukee, Wis., for defendant-appellant.

Francis D. Schmitz, Asst. U.S. Atty., Patricia J. Gorence, U.S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Before BAUER, Chief Judge, COFFEY and MANION, Circuit Judges.

COFFEY, Circuit Judge.

Appellant, Howard Phillips, appeals his conviction for robbing a federally insured savings and loan institution. *See* 18 U.S.C. § 2113(a), (d) (1982 & Supp. IV 1986). Phillips contends that the district judge deprived him of due process when the judge refused to release to Phillips the contents of an FBI informant file. Phillips contends that the file contains exculpatory information beyond that contained in a summary given to him by the prosecution, thus the entire file should have been provided to him. *See Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) (prosecutor's failure to disclose exculpatory material violates Due Process). The district judge acted properly and protected Phillips's rights when he inspected the entire file *in camera,* made a finding that the summary was complete and accurate, and restricted Phillips's discovery to the summary. The district judge's ruling and Phillips's conviction are affirmed.

### FACTS

On September 30, 1986, two men robbed a branch of the Republic Savings and Loan in Milwaukee, Wisconsin. Later that day, Milwaukee police officers spotted a car that fit the description of the one used in the robbery parked in an alley behind the home of appellant Phillips. As Phillips and another man, James Baldwin, left the house, the officers arrested them. A search of the car and the house revealed the stolen money (marked by dye from an exploding dye-pack placed in the money during the robbery) and other evidence of the crime. Since the date of his arrest, Phillips has never denied his involvement in the robbery. Instead, he has maintained that he participated in the crime only as an undercover informant for the FBI and that he acted with the acquiescence of the FBI agent to whom he reported. (Assuming this is true, Phillips alleges he would lack the necessary intent to be convicted of knowingly robbing the savings and loan.)

Phillips's involvement with the FBI began in late August 1986, about a month before his arrest in this case. Phillips initi-

ated contact with the FBI by placing a telephone call to the FBI's Milwaukee office. Special Agent Dan Craft answered the call. When Phillips spoke with Special Agent Craft, Phillips was wanted by the state of Wisconsin and, further, he believed that the FBI was looking for him. (The record does not reflect the nature of the state charges or whether the FBI was, in fact, interested in Phillips.) Phillips wished to surrender to the FBI, but after calling Craft, he was arrested by Wisconsin authorities. Thereafter, Special Agent Craft met Phillips on September 10, 1986, while Phillips was being held in the Milwaukee County Jail on the state charges. At the jail, Craft recruited Phillips as a paid informant to help the FBI combat a rash of bank robberies in Milwaukee.

At the jailhouse meeting, Phillips told Craft that he believed a certain savings and loan was the target for an upcoming robbery, and that he knew that certain individuals had been "casing" the savings and loan in preparation for the robbery. Acting on Phillips's tip, the FBI shortly thereafter arrested the individuals named by Phillips in the vicinity of the savings and loan. Special Agent Craft was now convinced that Phillips possessed reliable and accurate information which had already foiled one robbery. He returned to visit Phillips in jail on September 12, 1986. At the second meeting, Craft advised Phillips that he would receive payment for his help in preventing the robbery. He also advised Phillips orally of the FBI's informant guidelines, which Phillips would be expected to follow. At trial, Special Agent Craft testified that, consistent with those guidelines, he specifically warned Phillips that:

"[an informant] cannot be involved in a violent act or in the planning of it, and if they learn of a violent act, a pending violent act, that they have to do everything they can to dissuade it. They cannot be involved or initiate the planning of any criminal act. All they can do is listen and observe. They cannot be involved in any criminal act, no matter how minor. If we find out about it, we are obligated and mandated to advise the proper authorities and that if they do participate with us, that does not shelter them from any type of prosecution."

Wisconsin authorities shortly thereafter released Phillips and the Phillips–Craft relationship once again bore fruit almost immediately. On September 22, 1986, Phillips twice called Special Agent Craft to tell him about another forthcoming bank robbery. During the second call, Phillips told Craft that he might have to accompany the robbers. At trial, the parties disputed Craft's response. Phillips contends that Craft replied, "Okay," but Craft testified that he told Phillips, "[A]bsolutely not . . . you cannot go along." The robbery attempt aborted (because the bank had closed by the time the robbers arrived), and the waiting police arrested three people, including Phillips. However, Phillips was not charged in connection with the September 22 robbery attempt because the police did not believe they had sufficient evidence to make a good case against him.

Phillips next met with Special Agent Craft on September 24, 1986, when Phillips went to the FBI offices to be paid for the information he had given Craft at their September 10 meeting at the jail. By this time, Milwaukee police had informed Craft of Phillips's arrest during the attempted robbery two days earlier. Again, Craft and Phillips dispute Craft's response to Phillips's participation in the crime. Craft testified at trial that he "scolded [Phillips] like I would my eleven-year old son," and warned him not to get involved in any more criminal activity. Phillips contends that Craft merely paid him for the information he had given Craft at their September 10 meeting, showed him a videotape of a bank robbery, and patted him on the back.

Six days later, on September 30, 1986, Phillips and his companion, James Baldwin, committed the robbery for which Phillips now stands convicted. A federal grand jury indicted Phillips and Baldwin on October 8, 1986, charging them with aggravated bank robbery. *See* 18 U.S.C. § 2113(a), (d). Since his arrest, Phillips has steadfastly maintained that he believed himself to be working for Special Agent Craft during the robbery.

On October 20, 1986, Phillips's attorney requested that the government produce the exculpatory evidence contained in Phillips's FBI informant file, in particular any notes, transcripts or logs containing accounts of Craft's meetings and telephone conversations with Phillips. The attorney believed that the file contained information that would bolster Phillips's claim that he acted in conformity with Craft's instructions, or at least information with which he could impeach Craft's credibility. Soon thereafter, Phillips and the government agreed that the government would provide Phillips with a summary of the file. On March 5, 1987, four days before the commencement of Phillips's trial, the government produced the summary, as promised.

After reviewing the summary, Phillips's attorney expressed his dissatisfaction with the summary the government had provided, stating that the document failed to comply with his discovery request. Thus, on March 6, 1987, the attorney filed a motion *in limine* with the court in the form of a letter, requesting that the judge examine the entire file *in camera* to ensure that the summary fully reflected all of the exculpatory material in the file. Specifically, Phillips's attorney asked that the court address five specific questions regarding the contents of the informant file (as well as a general request for further exculpatory information) and that the court order production of any materials bearing on the questions raised. The government joined in the motion for *in camera* review of the file. The judge then reviewed the entire file *in camera*. On March 9, 1987, immediately prior to trial, the trial judge announced that he had completed his review of the summary and the complete file and had found that the summary fairly reflected all exculpatory material in the file. The judge

went on to address each of Phillips's questions, then denied Phillips's motion to gain access to the entire informant file.[1]

The trial commenced on March 7, 1987. At trial, Phillips attempted to convince the jury that he acted only as an informant during the September 30 robbery. Phillips contended that he had tried to notify Craft of the robbery by telephone on September 29, but that Craft was out of the office. He alleged he again was unable to contact Craft on September 30 because he could not use a telephone at any time when he was not observed by Baldwin. Apparently, the jury did not believe Phillips's account; on March 13, 1987, the jury found Phillips guilty as charged. On appeal, Phillips renews his argument that the informant file contains exculpatory materials beyond the information conveyed in the summary. Thus, he claims he should be granted discovery of the file and a new trial in which to use the information therein.

## DISCUSSION

■■■ Phillips bases his argument on his Due Process rights, as set forth in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).[2] In *Brady*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment irrespective of the good faith or bad faith of the prosecution." *Id.* at 87, 83 S.Ct. at 1196. "[E]vidence is material [under *Brady*] only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceedings would have been different." *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87

---

1. We have reviewed the FBI informant file and have compared it to the government's summary of the informant file, the March 6, 1987 letter challenging the completeness of the summary, and the trial judge's response to the March 6 letter, each of which is part of the record in this case. Our review convinces us that the trial judge thoroughly analyzed the informant file and completely and conscientiously answered every inquiry raised in Phillips's attorney's letter of March 6.

2. The parties agree that the March 6 letter constitutes a valid *Brady*-based discovery request. On appeal, Phillips contends that the Jencks Act also provides support for his request. *See* 18 U.S.C. § 3500 (as incorporated at Fed. R. Crim. P. 26.2). We disagree. Because Phillips did not invoke the Jencks Act before the trial court, he cannot rely on it now. *See United States v. Whaley*, 830 F.2d 1469, 1475–76 (7th Cir.1987).

L.Ed.2d 481 (1985) (per Blackmun, J., joined by O'Connor, J.); *see also United States v. Agurs*, 427 U.S. 97, 112–14, 96 S.Ct. 2392, 2401–02, 49 L.Ed.2d 342 (1976) (*Brady* rights apply only to evidence which is material); *United States v. Jackson*, 780 F.2d 1305, 1310 (7th Cir.1986) (interpreting divided *Bagley* decision as adopting "reasonable probability" standard, "at least in cases where the prosecution's knowing use of false testimony is not an issue"). Evidence may be material for *Brady* purposes not only if the evidence goes directly to the merits, but also if it may be used to impeach a prosecution witness. *Agurs*, 427 U.S. at 112–14, 96 S.Ct. at 2401–02 (discussing materiality of impeaching evidence); *United States v. Andrus*, 775 F.2d 825, 843 (7th Cir.1985). Thus, Phillips's argument could have some merit; if in fact the FBI informant file contained either information that clearly demonstrated that Phillips was acting on Special Agent Craft's instructions or information that would allow more effective cross-examination of Craft, and if that evidence were deemed material and relevant (as defined in *Bagley*), Phillips would have had a right to such information.

■■■ However, we hasten to point out that *Brady* does not grant criminal defendants unfettered access to government files. *Andrus*, 775 F.2d at 843; *United States v. Davis*, 752 F.2d 963, 976 (5th Cir.1985); *United States v. Van Brandy*, 726 F.2d 548, 551 (9th Cir.1984); *see also United States v. Navarro*, 737 F.2d 625, 630–32 (7th Cir.1984). Generally, the decisions whether to conduct an *in camera* review of government files in appropriate cases, whether to require discovery of materials contained therein, and in what form such materials should be produced are committed to the sound discretion of the district judge. *See United States v. Valona*, 834 F.2d 1334, 1341 (7th Cir.1987) (discovery issues committed to discretion of trial court). We review the district judge's disposition of discovery matters under the "abuse of discretion" standard. The court's discovery rulings cannot constitute an abuse of discretion "if reasonable men could differ as to the propriety of the court's action." *Valona*, 834 F.2d at 1341 (quoting *United States v. Abayomi*, 820 F.2d 902, 905 (7th Cir.1987)); *see also United States v. Allen*, 798 F.2d 985, 994 (7th Cir.1986) (discovery matters arising under Jencks Act reviewed under abuse of discretion standard).

■■ When a criminal defendant seeks access to confidential informant files, we rely particularly heavily on the sound discretion of the trial judge to protect the rights of the accused as well as the government. On the one hand, we are cognizant of defendant's expanded discovery rights under *Brady*. On the other, we have the government's substantial interest in maintaining the secrecy of its files, which may contain not only the names of the informants themselves, but also information concerning ongoing investigations into other matters, government investigation techniques, and the like. Thus, when a criminal defendant seeks to discover information contained in confidential government files, the trial court must balance the competing interests of the defendant and the government in deciding whether and in what form such discovery will be allowed. *See Roviaro v. United States*, 353 U.S. 53, 59–62, 77 S.Ct. 623, 627–28, 1 L.Ed.2d 639 (1957) (balancing of interests in determining whether to require government to reveal identity of informant-witness); *United States v. Fakhoury*, 819 F.2d 1415, 1424–25 (7th Cir.1987) (same); *Andrus*, 775 F.2d at 843 (defendant "not entitled to the personnel files of the law enforcement witnesses without even a hint that impeaching material was contained therein"); *Navarro*, 737 F.2d at 630–32 (court's refusal to order production of INS file of informant-witness did not violate Due Process); and *cf. Allen*, 798 F.2d at 1008–15 (Coffey, J., concurring in part and dissenting in part) (need to balance interests in Jencks Act discovery motions). We have reviewed the record in this case, including the FBI informant file as well as the summary, the March 6, 1987 letter, and the trial judge's response, and we are convinced that the trial judge's ruling was proper and that he did not fail to honor Phillips's *Brady* rights

in restricting Phillips's discovery to the summary.

In the case before us, the trial judge sought to balance and weigh, as well as to protect the rights of both the defendant and the government by reviewing the entire FBI informant file *in camera* and comparing its contents to the summary offered by the government. Not only were the trial judge's conduct and ruling appropriate under the circumstances, they were commendable. Federal appellate courts have approved the use of complete and accurate summaries of confidential files as an appropriate means of balancing the due process rights of the defendant and the privacy interests of the government and its witnesses. *See, e.g., United States v. Merida,* 765 F.2d 1205 at 1214–16 (5th Cir.1985); *Van Brandy,* 726 F.2d at 551–52. *In camera* inspection of disputed materials likewise allows the court to engage in a more delicate balancing of the competing interests than does a decision to decide a discovery issue based on the representations of the parties alone, *Navarro,* 737 F.2d at 631; thus we have repeatedly approved the procedure. *See, e.g., id.; Application of Storer Communications, Inc.,* 828 F.2d 330, 334–35 (6th Cir.1987); *United States v. Tucker,* 773 F.2d 136, 141–42 (7th Cir. 1985); *United States v. Esposito,* 771 F.2d 283, 287 (7th Cir.1985); *United States v. Wilson,* 715 F.2d 1164, 1170 n. 1 (7th Cir. 1983). Moreover, *in camera* inspection provides the additional advantage of including the disputed materials (sealed, of course) in the record, facilitating our review on appeal. *Navarro,* 737 F.2d at 631. Thus, while the procedure the trial judge employed here—submission of a summary, monitored by *in camera* review of the entire file—is not required, *cf. Andrus,* 775 F.2d at 843 (*in camera* inspection not always required); *Navarro,* 737 F.2d at 631 (*in camera* inspection not always required, but often preferable); *Allen,* 798 F.2d at 1011–15 (Coffey, J., concurring in part and dissenting in part) (need to lay proper foundation for *in camera* inspection under Jencks Act); the procedure is certainly appropriate and has been utilized in situations very similar to the one before us. *Merida,*

765 F.2d at 1214–16; *Van Brandy,* 726 F.2d at 551. Therefore, any objection by Phillips to the process used by the trial judge is without merit. Phillips can prevail only if our review of the informant file reveals that the trial judge abused his discretion by denying Phillips access to material, exculpatory evidence.

After reviewing Phillips's FBI informant file, we agree with the trial judge that the file contains no *Brady* material other than that reflected in the summary. The summary and the trial judge's conscientious response to Phillips's March 6 letter together fairly and accurately reflect the contents of Phillips's informant file. Because the file is sealed and we believe it should remain so, we refuse to detail its contents; however, our review of the record before us convinces us that Phillips's informant file contains no material, exculpatory information beyond that conveyed by the summary and the trial judge's comments thereon. We reiterate that a *Brady* request does not entitle a criminal defendant to embark upon an unwarranted fishing expedition through government files, nor does it mandate that a trial judge conduct an *in camera* inspection of the government's files in every case. Such matters are committed to the sound discretion of the trial judge. *Andrus,* 775 F.2d at 843; *Navarro,* 737 F.2d at 631. We will reverse the judge's actions only upon a showing of abuse of discretion. *Valona,* 834 F.2d at 1341. In the case before us, we hold that the trial judge did not abuse his discretion in denying Phillips's motion for production of the entire informant file. The summary, together with the judge's *in camera* inspection, fully protected Phillips's *Brady* rights. *See Merida,* 765 F.2d at 1214–16; *Van Brandy,* 726 F.2d at 551. Phillips's conviction is

AFFIRMED