In the

# United States Court of Appeals

## For the Seventh Circuit

No. 00-2937

JOEY A. PEATE,

*Plaintiff-Appellant*,

*v.*

STEVE MCCANN,

*Defendant-Appellee*.

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 3:99-CV-647-AS—**Allen Sharp**, *Judge*.

ARGUED OCTOBER 29, 2001—DECIDED JUNE 25, 2002

Before FLAUM, *Chief Judge*, and POSNER and DIANE P. WOOD, *Circuit Judges*.

DIANE P. WOOD, *Circuit Judge*.  Joey Peate is serving a sentence at the Miami Correctional Facility in Bunker Hill, Indiana. On July 2, 1999, while confined there, another inmate attacked Peate twice. Although Peate does not blame any prison officials for the first attack, he argues that Sergeant Steve McCann, a correctional officer, violated his rights under the Eighth and Fourteenth Amendments by facilitating and failing to break up the second attack with deliberate indifference to Peate's safety. The district court, after permitting only limited discovery, granted McCann's motion for summary judgment. We conclude that this disposition was premature and therefore reverse the grant of summary judgment.

**I**

Peate was in Miami's recreation yard on the afternoon of July 2, 1999. For some reason (undeveloped on this record), Scott McIntyre, another inmate, crept up behind Peate and thwacked him with a mesh laundry bag loaded with rocks, dirt, bricks, and cement that McIntyre had gathered in the yard. Before the day of the attack, McIntyre and Peate had never had an altercation. On the afternoon in question, however, they had already fought once for several minutes until McCann, along with the other prison staff in the yard, broke up the fracas. In order to do so, McCann had called a code "10-10" (offender fight) over his radio to get assistance. Once McCann was able to calm McIntyre down, he took the laundry-bag weapon from McIntyre. McCann then took McIntyre's left arm and escorted him away from Peate and toward the recreation gate.

What happened next is hotly disputed by the parties. What is clear is that McIntyre regained his laundry-bag weapon from McCann. The disagreement is over how he managed to do this. Some witnesses claimed that McIntyre grabbed it from McCann; others said that after a conversation, McCann gave the bag to McIntyre; and finally some recalled that McCann handed the bag off to McIntyre as Peate was charging at both McIntyre and McCann. With the bag restored to him, McIntyre broke away from McCann and attacked Peate with his make-shift weapon once again. Peate also had a weapon of sorts—a golf club from the yard's miniature golf course. It proved to be no match for McIntyre's bag, however; Peate ended up on the losing side of the fight, bleeding profusely. The altercation continued until Major Kimmel, Captain Payne and Lieutenant Batchelor arrived and restrained Peate while McCann restrained McIntyre. Peate maintains that until the three additional officials arrived on the scene, McCann stood by and watched McIntyre continuously beat him.

Peate sustained a dislocated finger and nerve damage in his left hand as a result of the beating. He then filed a *pro se* complaint on December 9, 1999, alleging that prison officials violated his Eighth and Fourteenth Amendment rights by willfully and intentionally neglecting to protect him from serious bodily injury. The district court dismissed all claims except the Eighth Amendment claim against McCann. McCann then moved for summary judgment on the remaining claims, arguing that the undisputed facts showed that he acted reasonably given the situation. The district court agreed, finding nothing in the record to demonstrate that McCann did anything but break up a fight between two inmates. Peate filed a timely notice of appeal from this judgment, as well as the district court's denial of his discovery requests. Although Peate acted *pro se* below, he now has counsel appointed by this court.

## II

Peate asserts that McCann violated his duty to protect inmates from a prisoner attack when he re-armed McIntyre and then stood by while McIntyre pummeled Peate with the loaded bag. No one disputes that prison can be a violent place. Nonetheless, prison officials have a duty to take reasonable steps to protect prisoners from this violence; prisoners are not required to live in a violent state of nature where brutal attacks are ignored. See *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). The Supreme Court has recognized that prisoners may obtain relief under the Eighth Amendment for injuries sustained in prison if the injury is objectively serious and the prison official acted with deliberate indifference to the safety and health of the inmate. *Id.* at 834. McCann does not argue that Peate's injury was not objectively serious. Instead, he maintains that his behavior was at worst unreasonable and certainly not deliberately indifferent. The district court agreed. We review a dis-

trict court's grant of summary judgment *de novo*. *Doe v. Howe Military Sch.*, 227 F.3d 981, 990 (7th Cir. 2000). In doing so, we examine the record in the light most favorable to Peate, the nonmoving party. *Id.* We may affirm the district court's judgment only if there are no material facts in dispute. *Id.*

As *Farmer* held, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. While this is a high hurdle for a plaintiff, it is not insurmountable; a plaintiff does not have to prove that the officer affirmatively intended harm to the prisoner. *Mayoral v. Sheahan*, 245 F.3d 934, 938 (7th Cir. 2001). Peate must demonstrate only that "the defendants *actually knew* of a substantial *risk* that [the prisoner] would seriously harm him." *Haley v. Gross*, 86 F.3d 630, 641 (7th Cir. 1996) (emphasis in original). This is a question of fact that may be established by circumstantial evidence. *Farmer*, 511 U.S. at 842. On the other hand, McCann is quite right to point out that negligence is not enough to establish a constitutional violation. *Luttrell v. Nickel*, 129 F.3d 933, 936 (7th Cir. 1997). Indeed, prison officials who actually knew of a substantial risk to inmate health or safety are free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted, because in that case it cannot be said that they were deliberately indifferent. *Farmer*, 511 U.S. at 847; *Soto v. Johansen*, 137 F.3d 980, 981 (7th Cir. 1998). The test of deliberate indifference ensures that the mere failure of the prison official to choose the best course of action does not amount to a constitutional violation. *Farmer*, 511 U.S. at 844.

McCann maintains that his conduct was reasonable because there was no way for him to predict that McIntyre

would attack Peate. The problem with this line of argument is that it does not distinguish between the first and the second attacks, even though Peate was careful to draw exactly this line in his complaint. If this case were only about the first attack, we would have no trouble agreeing with McCann: he had no personal knowledge of any bad blood between McIntyre and Peate, and so there was no way for him to predict their fight. Nor does Peate's complaint, when read liberally, suggest that other factors should have alerted McCann before the first attack. McCann further argues that as a prison guard, he should not be required to put himself at risk by breaking up a fight between two inmates armed with weapons. This too is true. See *MacKay v. Farnsworth*, 48 F.3d 491, 493 (10th Cir. 1995) (failing to intervene between inmates fighting with weapons is not deliberate indifference); *Arnold v. Jones*, 891 F.2d 1370, 1373 (8th Cir. 1989) (if intervening in a prison fight could cause serious injury, guards have no duty to do so as a matter of law).

Nonetheless, this reasoning, also adopted by the district court, speaks only to the first fight. The second fight, which the district court does not mention in its opinion, is another matter. Peate's claim is that McCann was deliberately indifferent when he *re-armed* McIntyre, minutes after he had stopped the fight. It was the first fight that gave McCann specific knowledge that there was a substantial risk that McIntyre would use the weapon to injure Peate. See *Farmer*, 511 U.S. at 842.

McCann wants this court to accept his version of events—that Peate attacked McIntyre and that McCann attempted to stop the second fight with CNS spray. The district court did just that. It noted that "there is [ ] nothing in this record to indicate that Sgt. McCann did anything other than to try to break up the fight between these two inmates." But this account is disputed by competent evidence in the record. Several witnesses stated in their affi-

davits that McCann handed McIntyre the laundry bag of bricks after engaging in a discussion. "I saw the offender McIntyre reach for the net bag from the Sgt. McCann, who gave the bag back to this offender who again started trying to attack Mr. Peate"; "Sgt. McCann picked up the net bag/alleged weapon, then gave it back to the white offender who then attempted to strike offender Peate a few more times." All of these eyewitness statements and more were before the district court by affidavit. While a jury would of course not be required to credit the testimony from the bystander inmates, it was improper for the district court to disregard these statements at the summary judgment stage. Even if, under *McCann's* version of the fight, he was at worst negligent and thus not liable, that is not the perspective we must take at this stage of the litigation. Instead, we must view the record in the light most favorable to Peate and draw reasonable inferences in Peate's favor. *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996).

Accepting Peate's view of events, which is supported by affidavits stating that McCann re-armed McIntyre by returning the laundry bag to him, there is sufficient evidence to permit a trier of fact to find that McCann acted with deliberate indifference. *Pavlick v. Mifflin*, 90 F.3d 205, 208 (7th Cir. 1996). At a minimum, his actions could demonstrate a disregard for Peate's safety, given the nature of the weapon all agree McIntyre had created. See generally *United States v. Vahovic*k, 160 F.3d 395 (7th Cir. 1998) (noting that in prison all deadly weapons are dangerous and only have one purpose whether or not they are handcrafted). Even if McCann was somehow unaware of the fact that a laundry bag loaded with rocks and bricks could be a weapon before the events of that afternoon, he witnessed the first fight, and that alone was sufficient notice. *Haley*, 86 F.3d at 640; see also *Pavlick*, 90 F.3d at 208.

McCann further argues that even if a factfinder found that he actually returned the bag to McIntyre, this was a reasonable response and possibly his only option, given the type of weapon—a laundry bag filled with rocks. Although McCann could not be liable if returning the bag to McIntyre was his only option, or even a reasonable option, *Farmer*, 511 U.S. at 847, the question whether other options existed is also a disputed fact on this record. It appears that there were other prison employees in the recreation yard, and McCann had just witnessed McIntyre use the laundry bag as a weapon. There were also other prisoners standing around. It is not clear why arming one of the two participants in the earlier fight was either the only option, or even a reasonable option, if (as McCann asserts) it was Peate who tried to resume fighting. Especially since we must assume for present purposes that the second fight did not break out until after McCann gave the bag back to McIntyre, McCann cannot avoid a trial based on his alleged lack of other options.

### III

Peate is also appealing the district court's rulings on some of his discovery motions. Prior to McCann's summary judgment motion, Peate asked the Indiana State Prison investigator to produce and copy the investigation file prepared after the July 2 fight. Peate hoped to use those documents to support his position that he was a victim of the fight and to substantiate his version of McCann's involvement. McCann filed a motion to quash, arguing that the information was confidential and its release would place the prison staff at risk. That very same day, the district court granted the motion to quash without giving Peate a chance to respond. Peate then filed a motion to compel discovery, reiterating his earlier argument. McCann responded, now arguing that Peate never even attempted to informally

resolve the discovery dispute, never issued any other discovery requests, and was simply trying to get out of paying the 15 cents per copy that the prison charges such requests. The district court denied Peate's motion to compel.

This court will reverse the district court's quashing of a subpoena only for an abuse of discretion. *Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556, 563 (7th Cir. 1984). Under this standard, the relevant inquiry is not how this court would have ruled, but instead is "whether *any* reasonable person could agree with the district court." *Id.* (emphasis in original). Here, although there were problems with the district court's initial handling of the motion, insofar as it acted *ex parte,* without providing Peate any opportunity to respond, in the end any prejudice Peate may have suffered was dissipated. Eventually, the district court entertained Peate's arguments about the material he was seeking. We conclude that Peate was not prejudiced by the district court's grant of the motion to quash, *In re Rassi*, 701 F.2d 627, 631 (7th Cir. 1983), and for that reason, we see no reversible error in the district court's ruling. Naturally, it will be up to the court on remand to decide how to handle any new discovery requests.

Peate next argues that the district court abused its discretion when it failed to grant his motion to compel, did not permit an *in camera* review of the investigation file, and refused to order a summary of the non-sensitive information. This court has often endorsed the *in camera* process as it "allows the court to engage in a more delicate balancing of the competing interests," rather than deciding a discovery issue based solely on the representations of the parties. *United States v. Phillips*, 854 F.2d 273, 278 (7th Cir. 1988). This procedure, however, is not one that is required. It is within the district court's discretion, *id.,* and Peate has not shown an abuse of discretion here.

Peate argues he was prejudiced by this discovery denial because information critical to his case is in the investigation file. The non-sensitive information Peate sought (*i.e.*, information regarding whether McCann gave the bag back) might have been intermixed with sensitive information in his discovery "packet." *Id.* at 277. We recognize, however, that the government has an interest in maintaining the confidentiality of files containing sensitive information regarding on-going investigations. *Id.* Although this interest will not always trump the interest of the opposing party, the necessary evaluation of the competing interests is best left to the district court. *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 646-47 (7th Cir. 2001). The district court's determination was not unreasonable given that Peate sought information regarding McIntyre's potential affiliation with the Aryan Nation, information that the prison had valid security reasons to maintain in a confidential manner. Once again, in light of the remand for trial, it will be open to the district court to consider alternative options that will permit Peate additional discovery if the court concludes in its discretion that this is appropriate.

## IV

The judgment of the district court is REVERSED, and the case is REMANDED for further proceedings consistent with this opinion.

A true Copy:

    Teste:

                _____
                *Clerk of the United States Court of*
                *Appeals for the Seventh Circuit*