# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 04-3776

DONNIE R. FISHER,

*Plaintiff-Appellant,*

v.

RICHARD LOVEJOY, Officer, #5893,

*Defendant-Appellee.*

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 C 9085—**Ronald A. Guzman**, *Judge.*

———————

ARGUED JUNE 1, 2005—DECIDED JULY 5, 2005

———————

Before BAUER, RIPPLE, and KANNE, *Circuit Judges.*

BAUER, *Circuit Judge.* Plaintiff-Appellant Donnie Ray Fisher, a pre-trial detainee at the Cook County Department of Corrections ("CCDOC"), brought a *pro se* civil rights action pursuant to 42 U.S.C. § 1983 for failure to protect him from being stabbed by other inmates. Fisher named Cook County Sheriff Michael Sheahan, Superintendent Henry Troka, and Officer Richard Lovejoy as defendants; the district court dismissed the claims against everyone but Officer Lovejoy. Following discovery, Officer Lovejoy moved for summary judgment. The district court granted the motion, and Fisher appealed. We affirm.

## I. Background

The following facts are either undisputed or presented in the light most favorable to Fisher. On August 7, 1999, Fisher was booked into the CCDOC. On November 19, 1999, he was moved to living unit CJ, which was his housing assignment on December 30, 1999, the date of the attacks at issue. Living unit CJ housed 48 inmates. Officer Lovejoy was assigned to cross-watching living units CJ and CF, which required that he walk back and forth between the two units' dayrooms.

On the evening of December 30, 1999, the dayroom of living unit CJ was filled with inmates. At approximately 7:15 P.M., Fisher saw another inmate take food from Fisher's cell. Fisher confronted the man, and a fight ensued. Minutes later a third man joined the fight, attacking Fisher. Fisher and his two assailants were then surrounded by eighteen or more chanting inmates who were hostile toward Fisher and participated in the attack. Eventually, Fisher broke free of the circle and ran toward the locked dayroom door, near which there was a window. Seeing Officer Lovejoy outside the window, Fisher pressed the red intercom button near the door and yelled for help.

Upon hearing Fisher's call for assistance, Officer Lovejoy made his way to the window, from which he saw inmate Kunta Chatman stab Fisher repeatedly with a sharpened instrument. Officer Lovejoy immediately called in a "10-10," requesting assistance from all available officers. The officers could not enter, however, until the door was unlocked from a centralized location. As they waited for the door to open, Officer Lovejoy could see that the room was in a state of pandemonium and that several inmates were beating Fisher. By the time the door opened, approximately twenty officers were waiting to enter. The officers rushed into the room and ordered everyone against the wall. Not all of the inmates complied, so the officers moved about the room, pushing inmates toward the wall.

While this was happening, Fisher remained on the floor. Officer Lovejoy walked over to him and ordered him against the wall. Fisher complained that he was injured, but Officer Lovejoy pulled him up from the floor and pushed him toward the wall. Officer Lovejoy then turned away from Fisher and walked to the far end of the room. As he walked, Officer Lovejoy spotted a knife in the area where the stabbing had occurred and had it collected along with several other homemade blades that were found.

Fisher placed his hands against the wall; he was close enough to other inmates that their forearms touched. From where Fisher stood he could hear two inmates whispering, and when one of them cursed he looked in their direction. Fisher was startled to see the inmate nearest him, who he was unable to identify, draw a knife from his waistband. Fisher spun off the wall, but his assailant stabbed him in the chest. Fisher fell to the floor, whereupon he was stabbed several more times and struck repeatedly by another assailant. Four or five guards rushed over to tackle the inmates and broke up the fight. Officer Lovejoy was standing at the far end of the dayroom when the second attack occurred.

## II. Discussion

We review the district court's grant of summary judgment *de novo. Tesch v. County of Green Lake*, 157 F.3d 465, 471 (7th Cir. 1998). Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgement as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Because summary judgment was granted in favor of the defendant, we must construe all

facts in the light most favorable to the plaintiff and draw all reasonable inferences in favor of that party. *Tesch*, 157 F.3d at 471.

Fisher claims that a reasonable jury could conclude that Officer Lovejoy violated his due process rights when he ordered Fisher to stand against the wall near other hostile inmates and then walked away. More specifically, Fisher contends that the district court misapplied both the proper summary judgment standard and the legal standard under *Farmer v. Brennan*, 511 U.S. 825 (1994), in failing to conclude that Officer Lovejoy's deliberately indifferent behavior allowed the second attack to occur.

The Due Process Clause of the Fourteenth Amendment protects pre-trial detainees from punishment and places a duty upon jail officials to protect pre-trial detainees from violence. *See Swofford v. Mandrell*, 969 F.2d 547, 549 (7th Cir. 1992). However, not every injury suffered by a detainee violates his civil rights. The Supreme Court has recognized that inmates are entitled to relief only when their injury is objectively serious and the prison official acted with deliberate indifference to the inmate's safety. *Farmer*, 511 U.S. at 834; *Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 764 (7th Cir. 2002).[1] Because Officer Lovejoy addressed only the subjective aspect of the inquiry, we too will confine our analysis to that prong of the test.

The Supreme Court ruled in *Farmer* that a prison official may be liable "only if he knows that inmates face a sub-

---

[1] Since the plaintiff in *Farmer* was a convicted prisoner, the Court analyzed the case under the Eighth Amendment. However, due process rights are at least as strong as the protections afforded convicted prisoners. Therefore, in cases involving pre-trial detainees, we commonly consult the "analogous standards of Eighth Amendment jurisprudence." *Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 764 (7th Cir. 2002).

stantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. That the officer had actual knowledge of impending harm can be inferred from circumstantial evidence. *Id.* at 842; *James v. Milwaukee County*, 956 F.2d 696, 700 (7th Cir. 1992); *Peate v. McCann*, 294 F.3d 879, 882 (7th Cir. 2002). Proving deliberate indifference, however, requires more than a showing of negligent or even grossly negligent behavior. *Farmer*, 511 U.S. at 835; *James*, 956 F.2d at 699. Rather, the corrections officer must have acted with the equivalent of criminal recklessness. *Farmer*, 511 U.S. at 836-37; *James*, 956 F.3d at 700; *Jackson*, 300 F.3d at 765. Indeed, an officer who actually knew of a substantial risk to a detainee's safety is free from liability "if [he] responded reasonably to the risk, even if the harm ultimately was not averted, because in that case it cannot be said that [he was] deliberately indifferent." *Peate*, 294 F.3d at 882 (citing *Farmer*, 511 U.S. at 847). "The test of deliberate indifference ensures that the mere failure of the prison official to choose the best course of action does not amount to a constitutional violation." *Id.* (citing *Farmer*, 511 U.S. at 844).

## A.  Issues of Fact

Fisher argues that the district court erred by resolving disputed issues of fact against him. One factual dispute raised by Fisher concerns Chatman's role in the second attack. The district court found that there was no real evidence that Chatman stabbed Fisher during the second fight. Fisher disagrees, citing an incident report which suggests that Chatman played a role in the second fight. That incident report states that inmates Charles Thompson and Chatman "had to be cuffed and restrained by staff after coming off [the] wall and trying to continue [the] disturbance." Page Dep. at 56. In addition, the report noted that

"inmates Thompson and Kunta [Chatman] were also written up for needing to be restrained and attempted murder to an inmate." Page Dep. at 61.

We disagree with Fisher's interpretation of the incident report. The report does not state that Chatman stabbed Fisher during the second attack. Indeed, Fisher could not identify Chatman as the inmate who stabbed him, despite acknowledging that he had turned to face his attacker. Fisher Dep. at 83. The district court did not err in ruling that there was no real evidence that Chatman stabbed Fisher during both attacks.

Fisher also discusses other factual disputes which he claims either were not decided in his favor or altered the complexion of the events. For example, Fisher identifies a discrepancy in testimony concerning whether inmates were searched before Fisher was placed against the wall. That issue, however, was not outcome determinative; nowhere did the district court state that its decision depended on the fact that inmates were searched before Fisher joined them on the wall. Fisher also identifies slight variances in accounts of the first fight; for example, although Officer Lovejoy acknowledged that he witnessed Chatman stab Fisher "repeatedly," he also described the two as "wrestling" on the ground. These two descriptions are not mutually exclusive and did not trivialize the violence of the attack. The same applies to the other minor variances that Fisher has identified.

## B. Issues of Law

In defining the deliberate indifference standard, the Supreme Court stated in *Farmer* that an official is not liable "unless [he] knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. Fisher, citing our decision in *Peate*, contends that Officer Lovejoy became aware of the risk to Fisher's safety upon witnessing

the initial attack. In *Peate*, a prison official stopped one inmate from attacking another with a laundry bag full of rocks, bricks, and cement, but the attack resumed minutes later. *Peate*, 294 F.3d at 881. The district court granted summary judgment in favor of the officer; we reversed in light of testimony by several witnesses that the official had returned the weapon to the assailant, thereby enabling the second attack. *Id.* at 883. We found that the first fight gave the officer "specific knowledge that there was a substantial risk that [the assailant] would use the weapon to injure [the plaintiff]" a second time. *Id.* We also held that a reasonable jury could conclude that the officer's response of rearming the assailant was unreasonable and therefore find that he had acted with deliberate indifference. *Id.* at 884.

Although there are similarities between *Peate* and the case that is now before us, the differences are significant. In *Peate*, the officer was aware of the risk to plaintiff's safety not solely because he witnessed the first fight, but also because he knew that the assailant had regained his weapon. *Peate*, 294 F.3d at 883. The officer could infer from these two pieces of information that a second attack was imminent. *Id.* In this case, Officer Lovejoy also had a clear view of the first fight. However, upon entering the room Officer Lovejoy found a knife on the floor near to where the first attack occurred, which would suggest that Chatman was unarmed. Fisher's Stmt. of Facts at ¶ 72; Lovejoy's Resp. to Fisher's Stmt. of Facts at ¶ 72. Unlike the officer in *Peate*, Officer Lovejoy did not return the weapon to Chatman or to any other inmate.

Furthermore, Fisher acknowledged that he was unable to identify the inmates next to him as participants in the first attack. Fisher's Dep. at 75. Indeed, Fisher did not protest his specific placement on the wall. It is noteworthy that Fisher was "shocked" to see his second assailant draw a knife. Fisher's Dep. at 76. If Fisher was surprised, it is safe to say that Officer Lovejoy was also surprised. In fact,

Fisher observed that Officer Lovejoy appeared to be "in shock," as well, after the second attack. Fisher's Dep. at 91.

Fisher contends, however, that his specific placement on the wall is beside the point, because every place on the wall was unsafe. He bases this conclusion on his estimation that possibly eighteen or more inmates participated in the initial attack, mostly by kicking and punching him when he was down. There is no doubt that the mob action of these inmates made the attack more brutal than it already was. But there was nothing to indicate to Officer Lovejoy that any of these inmates used weapons in the first attack, or that they were armed when they went to the wall. Similarly, there was nothing to indicate to Officer Lovejoy that any of these unarmed inmates would be able to cause Fisher a "serious injury" in the few seconds they might have available before officers intervened. Officer Lovejoy's decision to place Fisher on the wall was not "so dangerous that the deliberate nature of the defendant's actions [could] be inferred." *Jackson*, 300 F.3d at 765. We agree with the district court that it would not have been obvious to Officer Lovejoy that a substantial portion of the inmates on the wall were likely to or capable of causing Fisher serious harm.

Even if an official is found to have been aware that the plaintiff was at substantial risk of serious injury, he is free from liability if he responded to the situation in a reasonable manner. *Farmer*, 511 U.S. at 847; *Jackson*, 300 F.3d at 765. Fisher argues that it was unreasonable of Officer Lovejoy not to isolate him from the other inmates or search them all for weapons before placing him on the wall. Again, Fisher cites *Peate* for this proposition. We, however, think that *Peate* can be distinguished and that Officer Lovejoy's response was reasonably calculated to quickly restore order to a chaotic situation. Whereas the officer in *Peate* responded to the risk of injury by rearming one of the inmates, Officer Lovejoy sought to avert further violence by

immediately ordering everyone against the wall. *See McGill v. Duckworth*, 944 F.2d 344, 350 (7th Cir. 1991) (holding that a prison official's prompt action to remove the plaintiff from the general population upon learning of threats to his safety weighed against finding that the officer was deliberately indifferent). Also, Officer Lovejoy immediately called in twenty additional guards to assist him. It was reasonable for Officer Lovejoy to expect that their combined presence would discourage further attacks. *See id.* That another attack occurred does not mean that Officer Lovejoy's response was unreasonable. *Id.*

Fisher also argues that Officer Lovejoy acted unreasonably when he walked away from Fisher and personally failed to respond to the second attack. In *Haley v. Gross*, 86 F.3d 630 (7th Cir. 1996), this court found that a corrections officer acted with deliberate indifference when, upon observing a volatile situation between two inmates, he walked away, stating that he had no intention of defusing the situation. Officer Lovejoy's response was far different. There is no evidence that his purpose in walking to the other end of the room was anything but to restore order. In addition, it was reasonable to anticipate that the presence of twenty officers in the room would discourage further violence. Furthermore, there is no evidence that Officer Lovejoy was in a better position while on the other side of the room to stop the second attack than the four or five guards who responded immediately.

### III. Conclusion

For the reasons stated above, we AFFIRM the district court's grant of summary judgment in favor of Officer Lovejoy.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*