# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 05-3515

RONALD T. BORELLO,

*Plaintiff-Appellee,*

*v.*

RICHARD ALLISON, LISA GALES,
JOHN LIEFER, and JOHN INMAN,

*Defendants-Appellants.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 02 CV 51—**J. Phil Gilbert**, *Judge.*

ARGUED MARCH 30, 2006—DECIDED MAY 11, 2006

Before FLAUM, *Chief Judge*, and MANION and WILLIAMS,
*Circuit Judges*.

FLAUM, *Chief Judge.* Plaintiff-Appellee Ronald Borello
("Plaintiff") was an inmate in Illinois state prison. He
brought suit under 42 U.S.C. § 1983 against prison employ-
ees Richard Allison, Lisa Gales, John Liefer, and John
Inman (collectively, "Defendants"), alleging that
they violated his Eight Amendment rights by failing to
protect him from his cellmate, Roberto Abadia ("Abadia").
Defendants moved for summary judgment, arguing that
they were entitled to qualified immunity. The magistrate
judge recommended that summary judgment be granted in
favor of Defendants. The district court rejected the magis-

trate judge's report and recommendation and denied summary judgment to Defendants. Defendants appeal. For the following reasons, we reverse the district court's judgment, and remand the case for entry of summary judgment in favor of Defendants on qualified immunity grounds.

## I.  Background[1]

Plaintiff was an inmate at Menard Correctional Center, housed in the One North Cellhouse. His cellmate at the time relevant to this appeal was Roberto Abadia. Defendants were assigned to work in Plaintiff's cellhouse, Allison as a casework supervisor, Liefer as a corrections officer, Inman as a department captain, and Gales as a nurse.

On several occasions in early January 2001, another inmate, Michael Woodrome, talked to Inman, Allison, and Gales and expressed concern that Abadia and Plaintiff were assigned as cellmates. Around the same time, Plaintiff told Gales that he wanted to be assigned to a different cell, because Abadia was "nuts." Gales reported Plaintiff's comments to Allison and Inman, who told Gales that they were already aware of the situation. Allison and Inman made statements to Gales that led her to believe that Plaintiff had already declined an offer to be transferred to a different cell.

On January 11, 2001, Abadia starting behaving in a "particularly strange manner." He acted confused and paced in the cell. Also, for long stretches of time, he would place his arms against the cell wall and repeatedly strike his head against his arms. This behavior continued until at least January 15, 2001.

---

[1] The following facts are presented in the light most favorable to Plaintiff, the party resisting summary judgment.

On January 12, 2001, Abadia attempted to strike Plaintiff with his fist. Plaintiff stopped the blow before it landed. Abadia settled down and Plaintiff did not report the incident, feeling that the conflict had been adequately defused.

At approximately 9:30 a.m. on January 16, 2001, Abadia woke up Plaintiff and said he was "going home." Abadia began packing. Corrections officer Liefer observed Abadia's behavior and asked Abadia to explain himself. Abadia said he was packing to go home. Plaintiff asked Liefer to call someone to the cell to help Abadia. Liefer called nurse Gales and asked her to take Abadia to see a psychiatrist. Gales came to the cell and asked Abadia what he was doing. Abadia said he was leaving and his family was waiting for him in the parking lot. Gales realized that Abadia had a considerable amount of time left on his sentence. Plaintiff told Gales that Abadia had recently tried to strike him. Gales called Dr. Vallabhaneni, a psychiatrist, described Abadia's behavior, and arranged for Abadia to visit the doctor. Liefer removed Abadia from the cell and took him for an examination.

About fifteen minutes after being taken to the psychiatrist, Abadia was returned to the cell and then taken to the exercise yard for approximately one hour. While Abadia was in the exercise yard, Plaintiff asked to see department captain Inman. Plaintiff was taken to Inman's office around 10:30 a.m. Casework supervisor Allison was in Inman's office when Plaintiff arrived. Allison had told Inman about the situation between Plaintiff and Abadia. Plaintiff explained to Allison and Inman that Abadia had packed his belongings and said he was going home, and that Abadia had been banging his head against his arms on the cell wall. Plaintiff asked Inman if he could be moved to a different cell, and Inman responded "no." Plaintiff asserts that Inman also called him a "bug," laughed at him, and told him to go back to his cell. Plaintiff acknowledges,

however, that Inman told him that he could choose either to go back to the cell he shared with Abadia or be placed in segregation. Plaintiff chose to return to his cell.

Plaintiff was taken back to his cell and Abadia returned from the exercise yard. Inman and Allison questioned Abadia for approximately five minutes, and then left the cell. Plaintiff and Abadia both immediately went to sleep.

Approximately one week later, on January 23, 2001, Abadia hit Plaintiff on the side of the face with a radio, causing serious injury to his left eye.

Plaintiff brought a § 1983 suit against Allison, Gales, Liefer, and Inman, alleging violations of his Eighth Amendment rights. Plaintiff alleged that Defendants were deliberately indifferent to the danger posed to him because they left him in a cell with Abadia. Defendants moved for summary judgment on the basis of qualified immunity. Defendants argued that they did not ignore a risk of harm to Plaintiff, but responded reasonably to his needs by having Abadia examined by a psychiatrist and interviewing the two inmates. Alternatively, Defendants argued, it was not clearly established at the time of the incident that their actions constituted an Eighth Amendment violation.

The magistrate judge recommended that the district court grant summary judgment for Defendants. The magistrate judge found that even if Defendants were aware of the risk of harm to Plaintiff, they took reasonable steps in response to the risk.

The district court rejected the magistrate judge's report and recommendations. The district court found that there was sufficient evidence that Abadia presented a serious risk of harm to Plaintiff. The district court also determined that there was sufficient evidence that Defendants knew of the risk Abadia posed to Plaintiff, but did nothing in response. The district court found relevant that one week before

Abadia hit Plaintiff with the radio, Plaintiff asked prison officials to move him out of the shared cell. The district court also emphasized that Plaintiff told Defendants how strangely Abadia had been acting in the previous weeks. Based on this evidence, the district court denied Defendants' qualified immunity defense, finding that there was a material question of fact as to whether Defendants' response was reasonable.

## II.  Discussion

We review de novo the district court's determination of qualified immunity. *See McGrath v. Gillis*, 44 F.3d 567, 569 (7th Cir. 1995). We will affirm the district court's judgment if we find that Plaintiff is "present[ed] a version of the facts that is supported by the evidence and under which defendants would not be entitled to qualified immunity." *Marshall v. Allen*, 984 F.2d 787, 793 (7th Cir. 1993) (quoting *Hall v. Ryan*, 957 F.2d 402, 404 (7th Cir. 1992)) (internal quotation marks omitted).

Under the qualified immunity analysis, government officials performing discretionary functions are immune from suit if "their conduct 'could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Sornberger v. City of Knoxville*, 434 F.3d 1006, 1013 (7th Cir. 2006) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987)). Qualified immunity protects a defendant from liability as well as from the burden of standing trial. For that reason, courts should determine as early on in the proceedings as possible whether a defendant is entitled to qualified immunity. *See id.*; *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001).

In evaluating a claim of qualified immunity, a court conducts a two-step inquiry: "First the court must determine whether the disputed conduct, as alleged, violates a constitutional right; second, the court must determine

whether that right was 'clearly established' at the time of the alleged conduct." *Wernsing v. Thompson*, 423 F.3d 732, 742 (7th Cir. 2005) (citing *Saucier*, 533 U.S. at 201). The Court is required to consider the two steps in the proper order. *See Saucier*, 533 U.S. at 201 ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established.").

Before we reach the merits of the appeal, however, we must consider whether we have jurisdiction to consider Defendants' arguments. The Court's jurisdiction over an appeal from a denial of a qualified immunity defense is limited: the defendant "may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of material fact." *Board v. Farnham*, 394 F.3d 469, 476 (7th Cir. 2005) (internal citation and quotation marks omitted). Put another way, "it is inappropriate for us to review a district court's determination about the sufficiency of the evidence." *Id.*

However, the Court may "review 'abstract issues of law.'" *Id.* (quoting *Johnson v. Jones*, 515 U.S. 304, 319-20 (1995)). The Court's "jurisdiction extends to interlocutory appeals such as this one challenging a district court's determination that a set of facts demonstrate a violation of 'clearly established' constitutional law and preclude the defendants from proffering a qualified immunity defense." *Id.* "When deciding whether a public official is entitled to qualified immunity, 'we simply assume the disputed facts in the light most favorable [to the plaintiff], and then decide, under those facts, whether the [defendants] violated any of [the plaintiff's] clearly established constitutional rights.'" *Id.* (quoting *Coady v. Steil*, 197 F.3d 727, 731 (7th Cir. 1999));

*see also Nanda v. Moss*, 412 F.3d 836, 838 n.1 (7th Cir. 2005); *Johnson*, 515 U.S. at 311.

Taking the facts in the light most favorable to Plaintiff, we now consider whether Defendants violated Plaintiff's clearly established Eighth Amendment rights. Defendants had a duty as prison officials to protect Plaintiff "from violence at the hands of other inmates." *Washington v. LaPorte County Sheriff's Dep't*, 306 F.3d 515, 517 (7th Cir. 2002). However, "not every injury within a prison is an Eighth Amendment violation." *Id.*; *see also Haley v. Gross*, 86 F.3d 630, 640 (7th Cir. 1996).

To establish an Eight Amendment failure to protect claim, a plaintiff must show 1) that he suffered an objectively "sufficiently serious" injury; and 2) that he was "incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Additionally,

> a prison official may be liable "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. That the officer had actual knowledge of impending harm can be inferred from circumstantial evidence. *Id.* at 842; *James v. Milwaukee County*, 956 F.2d 696, 700 (7th Cir. 1992); *Peate v. McCann*, 294 F.3d 879, 882 (7th Cir. 2002). Proving deliberate indifference, however, requires more than a showing of negligent or even grossly negligent behavior. *Farmer*, 511 U.S. at 835; *James*, 956 F.2d at 699. Rather, the corrections officer must have acted with the equivalent of criminal recklessness. *Farmer*, 511 U.S. at 836-37; *James*, 956 F.2d at 700; *Jackson* [*v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 765 (7th Cir. 2002)]. Indeed, an officer who actually knew of a substantial risk to a detainee's safety is free from liability "if [he] responded reasonably to the risk, even

>  if the harm ultimately was not averted, because in that
>  case it cannot be said that [he was] deliberately indiffer-
>  ent." *Peate*, 294 F.3d at 882 (citing *Farmer*, 511 U.S. at
>  847, 114 S.Ct. 1970). "The test of deliberate indifference
>  ensures that the mere failure of the prison official to
>  choose the best course of action does not amount to a
>  constitutional violation." *Id.* (citing *Farmer*, 511 U.S. at
>  844).

*Fisher v. Lovejoy*, 414 F.3d 659, 662 (7th Cir. 2005).

In this case, Defendants admit that there are facts
indicating they had knowledge Plaintiff faced a risk of
serious harm. They argue, however, that they responded
reasonably to the risk. Defendants emphasize that they took
Abadia to see the psychiatrist, Dr. Vallabhaneni, as soon as
Plaintiff complained about Abadia's behavior on January
16, 2001. Dr. Vallabhaneni examined Abadia and deter-
mined that he was fit to return to his cell. Defendants
maintain that they were justified in relying on Dr.
Vallabhaneni's medical opinion. Defendants also point out
that they interviewed Plaintiff and Abadia on January 16
and determined that the situation was under control.

The district court found there was genuine issue of
material fact as to whether Defendants were justified in
relying on Dr. Vallabhaneni's decision to send Abadia back
to his cell. The district court found relevant that there
was no evidence regarding 1) what the doctor told Defen-
dants; 2) whether the doctor's opinion was reasonable; or 3)
what the defendants told the doctor before he examined
Abadia. The district court determined that without this
evidence, there was no way to determine whether Defen-
dants' reliance on the doctor's orders was reasonable.

We do not question the district court's reading of the
record. However, we conclude as a matter of law that the
evidence is insufficient to find that Defendants responded
unreasonably to the risk of harm posed to Plaintiff. As the
party resisting summary judgment, Plaintiff had the burden

to go beyond the pleadings and "affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact which requires trial." *East-Miller v. Lake County Highway Dep't*, 421 F.3d 558, 561 (7th Cir. 2005) (quoting *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir. 1998)) (internal quotation marks omitted). Plaintiff has not explained why it was unreasonable for Defendants to rely on Dr. Vallabhaneni's medical opinion that it was safe to return Abadia to the cell he shared with Plaintiff. For instance, Plaintiff has not alleged that Dr. Vallabhaneni had insufficient information to decide that it was safe for Abadia to return to his cell, that Dr. Vallabhaneni's medical opinion was unreasonable, or that Dr. Vallabhaneni told Defendants anything that would indicate that it was unsafe for Abadia and Plaintiff to continue sharing a cell. Plaintiff had an opportunity to depose Defendants, but is unable to point to any testimony supporting his position that Defendants should have disregarded Dr. Vallabhaneni's medical opinion.

Additionally, the undisputed evidence shows that Defendants did not rely solely on Dr. Vallabhaneni's opinion in deciding that Plaintiff could remain in the cell with Abadia. In addition to taking Abadia to see a psychiatrist, they interviewed the two inmates to assess the situation. Defendants determined that the tension between the inmates had been diffused. After Defendants took these actions, both men immediately went to sleep in the cell. The attack on Plaintiff did not occur until a week later, and there was no evidence that Plaintiff complained about Abadia between January 16 and the time of the attack.

The evidence shows that Defendants responded immediately to Plaintiff's complaints about Abadia, even if their response turned out to be inadequate. This is in contrast to other cases in which we have found Eighth Amendment violations based on failure to protect, in which a prison official ignored an inmate's complaint that he feared

violence from his cellmate or did not respond to actual violence between inmates. *See, e.g.*, *Velez v. Johnson*, 395 F.3d 732, 736-37 (7th Cir. 2005) (deliberate indifference found when prison guard failed to respond to an emergency call made by an inmate who was being attacked by his cellmate); *Haley*, 86 F.3d at 642 (deliberate indifference found where prison officer ignored as many as seven complaints by an inmate about his ongoing feud with his cellmate and his cellmate's "crazy" and "intimidating" behavior and never checked in on the cellmates).

We emphasize that a prison official is not entitled to qualified immunity simply because he or she takes *any* action in response to a risk of harm to an inmate—that response must be reasonable. In this case, we find that Defendants' response was "reasonably calculated to quickly restore order to a chaotic situation." *Fisher*, 414 F.3d at 664 (prison official was not deliberately indifferent when he responded to inmates' attack on the plaintiff inmate by placing all the inmates against a wall, even though the plaintiff was then stabbed by another inmate, because his response was reasonable under the circumstances). After Abadia returned from seeing Dr. Vallabhaneni, both Abadia and Plaintiff immediately went to sleep, leading Defendants to believe that any tension between the cellmates was diffused. Under these circumstances, Defendants' decision to leave Abadia and Plaintiff in the same cell "was not 'so dangerous that the deliberate nature of [Defendants'] actions [could] be inferred.'" *Id.* (quoting *Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 765 (7th Cir. 2002)); *see also Watts v. Laurent*, 774 F.2d 168, 172 (7th Cir. 1985).

Defendants may have acted negligently by not moving Plaintiff to another cell. But as we have repeatedly stated, "[m]ere negligence or even gross negligence does not constitute deliberate indifference." *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir. 1996) (citing *Wilson v. Seiter*, 501

U.S. 294, 305 (1991)). Failure to protect an inmate from harm "violates the Eighth Amendment's prohibition of cruel and unusual punishment only if 'deliberate indifference by prison officials [to the prisoner's welfare] effectively condones the attack by allowing it to happen [.]'" Lewis v. Richards, 107 F.3d 549, 553 (7th Cir. 1997) (quoting *Haley*, 86 F.3d at 640). Based on the record below, we find that Plaintiff has failed to show that Defendants effectively condoned Abadia's attack on him.[2] Defendants therefore are entitled to qualified immunity.

This should be the end of our inquiry. Because Defendant has not shown that his constitutional rights were violated, we need not move to the second step of the qualified immunity analysis: whether those rights were clearly established at the time of the attack. We note, however, that the district court improperly simplified this second step, finding that "[i]t is untenable to say that prison officials don't know what actions in this area are illegal." This analysis relieved Plaintiff of his burden of proof. *See Saucier*, 533 U.S. at 201.

The inquiry into whether a right is clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Brosseau v.*

---

[2] Plaintiff asserts in his brief that Inman gave him a choice between going to segregation or staying in his cell with Abadia. Plaintiff decided to remain in the cell. Although Plaintiff may have viewed being placed in segregation as an unfair punishment, "it is common to place prisoners in segregation for their own protection." *Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002). We cannot consider this issue, however, because neither party discussed it in the proceedings below. In Plaintiff's brief, he cites to his own deposition testimony for the fact that he could have moved to segregation. However, only excerpts of the deposition are included, and the page to which he cites is not part of the record on appeal.

*Haugen*, 534 U.S. 194, 198 (2004) (internal citation and quotation marks omitted). It is insufficient for a plaintiff simply to point to a recognized constitutional right and claim that the right has been violated. A plaintiff is required to show that a violation of that right has been found in factually similar cases, or that the violation was so clear that an official would realize he or she was violating an inmate's constitutional rights even in the absence of an on-point case. *See Wernsing*, 423 F.3d at 742; *see also Ulichny v. Merton Comm. Sch. Dist.*, 249 F.3d 686, 706 (7th Cir. 2001) ("A right is not clearly established if officers of reasonable competence could disagree on the issue."); *Anderson*, 483 U.S. at 640 ("The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.").

Although it is well established that a plaintiff can bring an Eighth Amendment claim based on a prison official's deliberate indifference to a substantial risk of serious harm, there is still a question whether the facts of this case are sufficient to establish deliberate indifference. The purpose of the second step of the qualified immunity analysis is to ensure that prison officials will not be held personally liable for their official conduct when they were not aware that their conduct violated any of an inmate's constitutional rights. Plaintiff has not attempted to compare this case to any factually similar ones, or argue that the violation was so obvious that Defendants should have been on notice that their actions constituted deliberate indifference.

### III.  Conclusion

For the foregoing reasons, we REVERSE the order of the district court and REMAND with directions to enter summary judgment for Defendants on qualified immunity grounds.

No. 05-3515                                                        13

A true Copy:

      Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*