In the

# United States Court of Appeals

### For the Seventh Circuit

No. 01-3564

BRYAN CASE,

*Plaintiff-Appellant,*

*v.*

RODNEY AHITOW, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 99-1389—**Joe Billy McDade,** *Chief Judge.*

ARGUED JULY 9, 2002—DECIDED AUGUST 21, 2002

Before POSNER, RIPPLE, and WILLIAMS, *Circuit Judges.*

POSNER, *Circuit Judge.* The plaintiff, an inmate of a state prison, was injured in an attack by another inmate, and he claims that the failure of the guards and officials of the prison to prevent the attack violated his Eighth Amendment right not to be subjected to "cruel and unusual punishments." Of course the defendants were not the actual attackers, but if they behaved with deliberate indifference to the plaintiff's safety, meaning that they knew of a serious danger to him (really knew—not just should have known, which would be all that would be required in a negligence case) and could easily have prevented it from materializing but failed to do so, they are liable.

E.g., *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *Peate v. McCann*, 294 F.3d 879, 882 (7th Cir. 2002); *Marsh v. Butler County*, 268 F.3d 1014, 1027 (11th Cir. 2001) (en banc). The district court granted summary judgment for the defendants, and so we construe the facts as favorably to the plaintiff as the record justifies.

Case, the plaintiff, and his assailant, Jones, were both in a "special management unit" at the Illinois River Correctional Center; the unit is for inmates who cannot be adequately protected elsewhere because they have a lot of enemies in the prison population. The unit has, so far as bears on this case, two wings. One houses both a segregation facility, where the inmates spend 23 hours a day in their cells and are handcuffed whenever they are moved out of or into the cells, and the "labor pool," whose inmates are not in segregation but are watched by guards whenever they are out of their cells. The prisoners in the other wing are not under any special surveillance when they are outside their cells. At the time of the assault Case was a member of the labor pool, having just been transferred there from segregation, and Jones was in the other wing, so they were housed in different wings and Case, though not Jones, was under surveillance whenever he was outside his cell but was no longer being escorted by guards.

Jones had an imposing record of violent behavior, including two convictions for armed violence, four for deviate sexual assault (homosexual), and one for forcible detention (we assume this was for his taking another prisoner hostage, although that may have been another of his crimes); and he had six times assaulted fellow inmates. He repeatedly threatened to beat and rape Case, and once grabbed Case who fought him off with a pool cue (apparently they had the same inmate status at the time and so were using the gym at the same time). By

November 1997, the month before the assault giving rise to this case, Jones was issuing threats against Case every couple of days, including threats to kill him. Because of his small stature and Jones's threats, Case was classified by a prison psychologist as a "vulnerable victim." Case wrote the head of the prison system (who is no longer a defendant) that Jones had threatened to rape him when he could "access him" upon his release from segregation, which occurred shortly before the assault. Case had written other prison staff complaining that he was being harassed, but did not identify Jones in those letters.

Case was unloved by the guards, both because of frequent disciplinary problems and because he had agreed to testify in a drug case against a guard at a prison of which he had formerly been an inmate. One inmate attested to having overheard one of the defendants, Captain Smith, tell Jones that if he did anything to Case he should be sure not to get caught "because I don't know if I could cover for you if it comes down to it."

The assault occurred only three days after Case's release from segregation to the labor pool. He was leaving the prison dining room after breakfast by a hallway that led past the prison's print shop—where, as it happened, Jones was assigned to work without supervision despite his terrible record. As Case passed by the door to the shop, approximately 50 minutes after the beginning of Jones's working day, Jones leapt out and repeatedly hit Case with the head of a broom, inflicting injuries that include a permanent hearing loss. The broom head, like other potential weapons, was supposed to be locked away, but was not.

Case's theory is that the defendants (or some of them— we are doubtful that the plaintiff can establish the com-

plicity of all the defendants, who include the prison's warden) were out to "get" him, and knowing that Jones if given a chance would attack him released Case from segregation so that he would pass by the print shop unescorted by guards, thus giving Jones an opportunity to attack Case and "teach him a lesson." (A guard observed the attack and called other guards who eventually subdued Jones, though not until he had assaulted another inmate as well.) It's as if the guards had placed a hungry lion in the print shop and opened the door as Case passed by. The case law confirms that the behavior alleged by Case satisfies the deliberate-indifference standard. *Pavlick v. Mifflin*, 90 F.3d 205, 208 (7th Cir. 1996); *Cantu v. Jones*, 293 F.3d 839, 843-45 (5th Cir. 2002); *Fischl v. Armitage*, 128 F.3d 50, 56-58 (2d Cir. 1997); *Street v. Corrections Corp. of America*, 102 F.3d 810, 816 (6th Cir. 1996).

Even if Case cannot at trial sustain his claim that the defendants used Jones as their instrument to assault him (for the trier of fact might disbelieve the inmate's testimony, which Smith denied, about Smith's conversation with Jones), the other evidence that we have summarized, if believed by the trier of fact, would establish a violation of the Eighth Amendment. Remember that the test is whether the guards know that the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so. There is evidence that the defendants knew that Jones posed a serious danger to Case, and they could have averted the danger easily either by leaving Case in segregation (it is common to place prisoners in segregation for their own protection, *Babcock v. White*, 102 F.3d 267, 269 (7th Cir. 1996); *Curley v. Perry*, 246 F.3d 1278, 1282 (10th Cir. 2001); *Hamilton v. Leavy*, 117 F.3d 742, 747-48 (3d Cir. 1997); *Hosna v. Groose*, 80 F.3d 298, 301 (8th Cir. 1996)) or by placing the predatory

Jones in segregation or at least by assigning him to work in a part of the prison not traversed three times a day by Case. No more is necessary to establish deliberate indifference and so a violation of the Eighth Amendment. *Weiss v. Cooley*, 230 F.3d 1027, 1032 (7th Cir. 2000); *Billman v. Indiana Dep't of Corrections*, 56 F.3d 785, 788-89 (7th Cir. 1995); *Doe v. Bowles*, 254 F.3d 617, 622 (6th Cir. 2001); *Robinson v. Prunty*, 249 F.3d 862, 867 (9th Cir. 2001); *Hayes v. New York City Dep't of Corrections*, 84 F.3d 614, 621 (2d Cir. 1996). These cases are sufficiently close to the present case to scotch the defendants' claim of immunity.

We are not impressed by the repeated reminders by the defendants' lawyer that prisons are dangerous places, reminders he inconsistently bracketed with an assurance that none of the defendants was aware of there *ever* having been a fight between inmates in the special management unit—an assurance grievously wanting in credibility. Prisons are dangerous but Case was not a victim of the inherent, as it were the baseline, dangerousness of prison life, but, if his story is true, either of a plot by the guards to punish him or a failure of protection so egregious as to bring this case within the rare category of meritorious Eighth Amendment claims by prisoners.

"If his story is true . . ."—the plaintiff is entitled to a trial, but of course the trier of fact may disbelieve his evidence, all or most of which comes from inmates, who tend not to be highly credible witnesses.

REVERSED AND REMANDED.

A true Copy:

      Teste:

                        _____
                        *Clerk of the United States Court of*
                        *Appeals for the Seventh Circuit*