# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 02-3491

ROBERT J. PIERSON,

*Plaintiff-Appellant,*

v.

WILLIAM HARTLEY, Supervisor, DAWN MACMILLAN,
TERRELL TRIGGS, in their official and individual
capacities, et al.,

*Defendants-Appellees.*

———————

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 00 C 539—**Robert L. Miller, Jr.**, *Chief Judge.*

———————

ARGUED OCTOBER 28, 2004—DECIDED DECEMBER 14, 2004

———————

Before POSNER, KANNE, and ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge.* Robert J. Pierson, an inmate of
the Indiana State Prison, was assaulted by fellow inmate
Jeremy Wilkinson while he slept. Wilkinson beat Pierson
with brass locks stuffed in a sock, gashing his head and
knees and crushing his left testicle. The attack required
surgical removal of Pierson's damaged testicle and kept him
a month in the prison hospital. Pierson sued prison officers

and officials under 42 U.S.C. § 1983, alleging that they knew of and ignored a serious risk to his safety. A jury found for Pierson against two of the officers and awarded damages, but the district court vacated the jury verdict and entered judgment as a matter of law for the defendants. Because the court directed judgment against Pierson, we construe the facts in the light most favorable to him. *Cefalu v. Village of Elk Grove*, 211 F.3d 416, 422 (7th Cir. 2000); *Mathur v. Bd. of Tr. of So. Ill. Univ.*, 207 F.3d 938, 941 (7th Cir. 2000).

At the time of the attack, both Pierson and Wilkinson were living in the "E" dormitory unit at the Indiana State Prison. "E" dormitory is considered a meritorious assignment. Unlike the traditional cellblock units that house the general prison population, "E" dormitory is an open-spaced setting that allows unrestricted movement within the unit. To be eligible for placement there, a prisoner must have spent at least one year in the general prison population and for at least ten years have been free from convictions or conduct violations that would be considered a serious security threat.

Pierson was already housed in "E" dormitory when Wilkinson arrived. Wilkinson had spent the previous six months at the Benton County Jail, where his time was marked by a history of violent conduct, including wresting a toilet from a wall and concealing a nightstick and extension cord in his cell. When the Benton County Sheriff transferred Wilkinson to the prison, he sent along a letter detailing Wilkinson's behavior at the jail and describing him as an "ESCAPE AND ASSAULT RISK." Despite this warning, and the fact that Wilkinson had not spent any time in the general population, prison unit team manager Dawn MacMillan and casework manager Charles Wood placed him directly in the "E" dormitory. Five months later, Wilkinson was convicted in the prison disciplinary system of possessing a weapon. Again, even though inmates with a

prison conviction typically are removed from "E" dorm and placed in a cellblock unit, Wilkinson was allowed to remain. Several months later, he brutally attacked Pierson.

Pierson sued a number of prison officers and officials, alleging that they had violated his Eighth Amendment rights by failing to protect him from the assault. At the outset of the case, the district court dismissed two of the officials—Indiana's Department of Corrections Commissioner and its Classification Director—for lack of personal involvement but allowed Pierson to proceed to trial *pro se* against Indiana State Prison's current and former superintendents, classification officer William Hartley, correctional officer Terrell Triggs, MacMillan, and Wood. At trial, the bulk of Pierson's evidence consisted of his testimony recounting the events leading up to the attack. He also testified to the contents of prison records that he claimed to have seen at one point concerning Wilkinson's assignment to "E" dorm. Although Pierson requested the documents during discovery, the defendants did not produce them. Consequently, Pierson was allowed to attest to what he saw, including a statement that MacMillan and Wood were involved in Wilkinson's assignment.

At the close of Pierson's case, the defendants moved for judgment as a matter of law, arguing that the evidence failed to show either that they had decided to place Wilkinson in "E" dormitory or that they knew of any danger posed to Pierson. The judge granted the motion with respect to the prison superintendents, noting no causal connection between them and the assault. The remaining defendants proceeded with their case and, at the close of their evidence, renewed their motion for judgment as a matter of law. The judge took the motion under advisement. The jury returned a verdict for defendants Hartley and Triggs but against MacMillan and Wood, assessing $50,000 in damages each. MacMillan and Wood moved once more for judgment as

a matter of law on the question of the sufficiency of the evidence, and the court again took the matter under advisement.

Three months later, the court granted the defendants' motion and reversed the jury verdict, finding that the jury instructions had "provided the jury with an insufficient understanding of the nature of prison officials' constitutional obligation to protect one inmate from another." The court explained that the jury was not and "could not reasonably have been" instructed on the scope of the Eighth Amendment and its legal standard of deliberate indifference in light of "the spectrum of cases" on the subject. Further, after comparing the facts of Pierson's case with case law from this and other circuits, the district court pronounced itself "firmly persuade[d]" that "no constitutional violation occurred" because Pierson's evidence was insufficient to show a deprivation of his rights. It set aside the verdict and entered judgment for MacMillan and Wood.

On appeal, Pierson challenges only the district court's decision to grant judgment as a matter of law to MacMillan and Wood. He points out that the court erred by reconsidering the jury instructions because the defendants waived any objection on the issue by not contesting the instructions before the jury retired. Moreover, he contends, the jury was adequately instructed as to the proper legal standard for showing a constitutional violation under the Eighth Amendment. Finally, Pierson argues that the court erroneously granted judgment as a matter of law because the evidence was sufficient for a reasonable jury to find that MacMillan and Wood knew of and ignored a risk to his safety.

As an initial matter, we are troubled by that portion of the district court's order suggesting that it granted judgment to the defendants as a matter of law because the jury was inadequately instructed. Courts generally may not

grant judgment as a matter of law on an issue not raised in the pre-verdict motion, *see* Committee Note on 1991 Amendment to Fed. R. Civ. P. 50; *Duro-Last, Inc. v. Custom Seal, Inc.*, 321 F.3d 1098, 1107 (Fed. Cir. 2003); *American & Foreign Ins. Co. v. Bolt*, 106 F.3d 155, 159-60 (6th Cir. 1997); *Kutner Buick, Inc. v. American Motors Corp.*, 868 F.2d 614, 617 (3d Cir. 1989); 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2537, pp. 344-45 (2d ed. 1995), and the defendants here did not raise any issue with the instructions. Just as importantly, we discern no error in the legal standard that the jury applied.

Following *Farmer v. Brennan*, 511 U.S. 825 (1994), we have held that in order to establish a violation of the Eighth Amendment, a plaintiff must show that a prison official was deliberately indifferent to a substantial risk of serious harm to an inmate. *See, e.g., Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002); *Reed v. McBride*, 178 F.3d 849, 854 (7th Cir. 1999); *Mathis v. Fairman*, 120 F.3d 88, 91 (7th Cir. 1997). Negligence on the part of an official does not violate the Constitution, and it is not enough that he or she should have known of a risk. *Haley v. Gross*, 86 F.3d 630, 641 (7th Cir. 1996). Instead, deliberate indifference requires evidence that an official actually knew of a substantial risk of serious harm and consciously disregarded it nonetheless. *Id.* Knowledge of a risk can be shown if an official was exposed to information from which the inference could be drawn that a substantial risk exists, and he or she also draws the inference. *Proffitt v. Ridgway*, 279 F.3d 503, 506 (7th Cir. 2002); *Mayoral v. Sheahan*, 245 F.3d 934, 938-39 (7th Cir. 2001).

The instruction given to the jury explained these elements. It read:

> . . . Deliberate indifference means that a defendant knew of and disregarded a substantial risk to the plaintiff's safety. A defendant knew of a substantial

> risk of serious harm if he was aware of facts from which such a risk could be inferred and he actually made that inference.
>
> In deciding whether a defendant knew of such a risk, you should consider whether Mr. Pierson notified a defendant of the specific risk posed to him by Mr. Wilkinson, or, if a defendant did not know that Mr. Pierson was especially likely to be injured as a result of such a risk, whether the specific risk was obvious. Knowledge of general risks of violence in prison are not sufficient to demonstrate deliberate indifference.

Because we perceive nothing in this formulation that is at odds with the proper legal standard we have just described, *see Reed*, 178 F.3d at 854; *Haley*, 86 F.3d at 640-41, we do not agree with the district court that the jury was provided with an insufficient understanding of the law.

We also disagree with the court's conclusion that Pierson did not present sufficient evidence to demonstrate a violation of his constitutional rights. The law imposes a high standard for overturning a jury verdict. *3M v. Pribyl*, 259 F.3d 587, 606-07 (7th Cir. 2001); *United States v. Billops*, 43 F.3d 281, 284 (7th Cir. 1994). Although we review *de novo* the decision to direct judgment as a matter of law, our task when reviewing an overturned jury verdict is confined to "assessing whether no rational jury could have found for the plaintiff," *Mathur*, 207 F.3d at 941 (quotation marks omitted), drawing all inferences in favor of the party against whom the judgment is directed and for whom the jury found, *Honaker v. Smith*, 256 F.3d 477, 484 (7th Cir. 2001). Thus, we inquire only whether the evidence, viewed in the light most favorable to Pierson, was sufficient for a jury to find that MacMillan and Wood knew that Wilkinson posed a substantial risk of harm to Pierson and that they consciously disregarded that risk.

The jury here heard enough evidence to find that MacMillan and Wood knew that Wilkinson posed a substantial risk to the other inmates. The jury heard testimony suggesting that MacMillan and Wood reviewed the Benton County Sheriff's letter, which warned of Wilkinson's aberrant behavior and advised that he was an escape and assault risk. The jury also could have found that both MacMillan and Wood knew of Wilkinson's weapons conviction from descriptions of their job duties. For instance, the jury heard testimony that Wood handled transfer requests for the prisoners and that Wilkinson's request to remain in "E" dorm pending the appeal of his weapons conviction was approved. The jury could have inferred that Wood approved the request and reviewed the conviction in doing so. As for MacMillan, the jury heard her testify that she handled security and supervised the case managers in "E" dorm; the jury could have inferred that she would have been aware of any security violations, including the weapons conviction, as part of her responsibilities. Finally, Pierson submitted documentation of the prison's policy for placement in "E" dorm requiring at least one year in the general prison population and at least ten years free from serious convictions or conduct violations. MacMillan and Wood knew Wilkinson had neither. Whether the defendants knew that Wilkinson posed a specific risk to Pierson—rather than all the members of "E" dorm—is unimportant; for in order to establish a constitutional violation, it does not matter "whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk." *Haley*, 86 F.3d at 643 n.33; *Billman v. Indiana Dept. of Corr.*, 56 F.3d 785, 788 (7th Cir. 1995).

The jury could have also found that MacMillan and Wood, knowing that Wilkinson posed a substantial risk of harm, disregarded that risk, first by assigning Wilkinson to the

dorm and then by allowing him to remain following his weapons conviction. Although MacMillan and Wood denied any role in Wilkinson's assignment, Pierson was allowed to testify to the contents of a prison report that, according to him, included a statement that both MacMillan and Wood made the decision to place Wilkinson in the dorm. Further, as the supervisor and case manager for "E" dorm, MacMillan and Wood would have been involved in any decision to transfer Wilkinson. But Wilkinson inexplicably was allowed to stay on in the dormitory after his weapons conviction; even MacMillan testified that it was unusual for a prisoner to remain following that kind of violation. Such inaction in the face of a substantial risk is sufficient to demonstrate deliberate indifference under the Eighth Amendment. *See Case*, 301 F.3d at 607; *Billman*, 56 F.3d at 788.

The judgment of the district court is reversed and the case remanded with instructions to reinstate the jury's verdict.

REVERSED AND REMANDED.

No. 02-3491 9

A true Copy:

Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*