UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Submitted January 4, 2006[*]
Decided January 6, 2006

**Before**

Hon. RICHARD A. POSNER, *Circuit Judge*

Hon. DANIEL A. MANION, *Circuit Judge*

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

No. 05-1092

| | |
|---|---|
| JOSE MEDRANO, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Nothern District of Illinois, Eastern Division |
| *v.* | No. 04 C 1399 |
| KEVIN SMITH, et al., *Defendants-Appellee*s. | Charles R. Norgle, Sr., *Judge.* |

## O R D E R

Illinois inmate Jose Medrano allegedly suffers from recurring back and shoulder conditions that previously required surgery.  In this suit under 42 U.S.C. § 1983, he claims that doctors at three different prisons have ignored his medical problems in violation of the Eighth Amendment.  The district court, *sua sponte*, evaluated Medrano's complaint as supplemented by a proposed amendment, and concluded that he states no claim for relief against any of the doctors.  We hold otherwise and remand for further proceedings.

---

[*] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary.  Thus, the appeal is submitted on the briefs and the record.  *See* Fed. R. App. P. 34(a)(2).

We accept as true the facts Medrano relates in his complaint, his proposed amendment, and to the extent consistent, his appellate brief. *De Walt v. Carter*, 224 F.3d 607, 611-12 (7th Cir. 2000); *Gutierrez v. Peters*, 111 F.3d 1364, 1367 n.2 (7th Cir. 1997). Medrano underwent a discectomy (at L5-S1) in 1988 before his present incarceration. He also had surgery for a shoulder condition in 2001 while imprisoned at the Joliet Correctional Center. Medrano suffers as well from carpal tunnel syndrome and in the past has experienced epileptic seizures.

In April 2002, while confined at the Stateville Correctional Center, Medrano began experiencing severe shoulder and back pain. He was taken to the infirmary and was seen by Dr. Aguinaldo. Medrano told Aguinaldo about his prior surgeries, and explained that the pain in his lower back was becoming more frequent and was sometimes coupled with shooting pain or numbness in his right leg. Medrano also told the doctor that once again he was experiencing the pain and limited range of motion that preceded his shoulder surgery. But Aguinaldo, without ordering any diagnostic tests or even conducting a physical examination, declared that Medrano would be fine if he lost weight. The doctor prescribed Motrin, an analgesic and anti-inflamatory, for Medrano's carpal tunnel, but otherwise provided no further treatment in the ensuing months.

In January 2003, Medrano was sent to the University of Illinois Hospital for examination by Christopher Bergin, an orthopedist. Dr. Bergin had been consulted to assist in treating Medrano's carpal tunnel, but during the visit Medrano persuaded Bergin to examine his back, which had worsened. Around the time of this visit (perhaps as a consequence of seeing Bergin; Medrano is not specific), Medrano began taking Robaxin, a muscle relaxant used in treating acute musculoskeletal pain. *See* PHYSICIAN'S DESK REFERENCE 770 (60th ed. 2006); THE PDR FAMILY GUIDE TO PRESCRIPTION DRUGS 598 (9th ed. 2002). He was also taking Neurontin (or so we surmise; Medrano spells it "Nourotin"), a drug used in treating epilepsy. *See* PHYSICIAN'S DESK REFERENCE at 2498-500.[1] Medrano was still housed at Stateville, but he does not say who at the prison authorized the visit with Bergin or prescribed the medications he was taking. He does insist that Dr. Aguinaldo did not make the referral.

Dr. Bergin concluded that Medrano was experiencing further degeneration at the point of his discectomy and opined that a spinal fusion likely would be necessary. Bergin scheduled an appointment for an MRI and what Medrano

---

[1] Medrano lists a third drug, which he calls "Naporson." Our research discloses no such drug. He may be referring to Naprosyn, used primarily to treat arthiritis but also used in general pain management. *See* PHYSICIAN'S DESK REFERENCE 2770 (60th ed. 2006).

describes as "epidural injections." But when Medrano returned to Stateville, the medical director, Kevin Smith, became upset and canceled Medrano's return visit to the hospital with the explanation that Bergin was supposed to treat Medrano's carpal tunnel, not his back.

Shortly thereafter, Medrano was transferred from Stateville to the Menard Correctional Center. Upon his arrival, Medrano saw Dr. Doughty and Dr. Rice. He told both about this back condition and about Dr. Bergin's preliminary diagnosis. He also informed the doctors about his shoulder pain, which had grown progressively worse over the previous year. They reacted by stopping Medrano's prescriptions for Robaxin and the other drugs, and giving him instead Elavil and ibuprofen. The two doctors explained that at Menard the drugs Medrano was taking are not prescribed, and they would not prescribe suitable substitutes even after Medrano alerted them that Elavil is contraindicated for patients with epilepsy, *see* THE PDR FAMILY GUIDE, *supra*, at 246, and that ibuprofen caused him severe stomach problems. Neither would Doughty and Rice refer Medrano to an orthopedist for investigation of his back condition; they told him they do not treat his type of condition at Menard and that he should transfer elsewhere if he wanted better medical treatment. During Medrano's time at Menard, the two doctors did not examine him to determine the source of his back and shoulder pain, and did not provide any treatment.

In June 2003, Medrano was transferred again, this time to Pontiac Correctional Center. There he complained to the medical director, Arthur Funk, about his still-untreated back and shoulder pain. After two months Dr. Funk finally saw him. But Funk, without ordering any diagnostic tests, simply informed Medrano that he disagreed with Dr. Bergin's assessment. He added that doctors at Pontiac would address Medrano's other health issues. Funk, though, did reinstate Medrano's prescription for Robaxin and issue him a "low bunk permit" so that he would not have to climb to a top bunk.

Medrano initiated this suit in February 2004 against Drs. Aguinaldo, Smith, Doughty, and Rice. He alleges that their failure to treat his back and shoulder pain has worsened those conditions. The district court ordered the marshals service to serve the complaint on these defendants, and in June 2004, while that process was ongoing, Medrano filed a motion asking for leave to add Dr. Funk as an additional defendant. The court responded to that motion in December 2004 by dismissing the action *sua sponte* (none of the defendants ever answered the complaint) under 28 U.S.C. § 1915(e)(2). The court reviewed both the original complaint and the proposed amendment, and concluded that Medrano failed to state a claim against any of the defendants.

On appeal Medrano argues that the district court erred in dismissing his suit under § 1915(e)(2)(B)(ii) because his allegations that Drs. Aguinaldo, Smith, Doughty, Rice, and Funk denied him medical care are sufficient to state a claim under § 1983. We construe *pro se* complaints liberally, *Ciarpaglini v. Saini*, 352 F.3d 328, 330 (7th Cir. 2003), and review dismissals under § 1915(e)(2)(B)(ii) de novo, *De Walt v. Carter*, 224 F.3d 607, 611-12 (7th Cir. 2000). We will affirm such a dismissal only if "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). "'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Caremark, Inc. v. Coram Healthcare Corp.*, 113 F.3d 645, 648 (7th Cir. 1997) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

To state an Eighth Amendment claim, an inmate must allege only that prison officials responded with "deliberate indifference" to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A medical need is sufficiently serious where failure to treat it might result in further significant injury or the "unnecessary and wanton infliction of pain." *See Gutierrez*, 111 F.3d at 1373 (internal quotation marks and citation omitted). Medrano's back and shoulder conditions, both of which required previous surgery and are now causing him severe pain, obviously qualify. For purposes here, then, the relevant question is whether Medrano sufficiently alleges that the defendants showed deliberate indifference, i.e., they knew about, but consciously disregarded, his medical needs. *See Pierson v. Hartley*, 391 F.3d 898, 902 (7th Cir. 2004).

The district court labeled this case a "classic example" of an inmate alleging, not deliberate indifference by his prison doctors, but disagreement with their "prescribed course of treatment." That conclusion may ultimately prove founded as a matter of evidence, but it is not consistent with Medrano's complaint. Simple differences of opinion among medical personnel or between the inmate and his prison doctors concerning what is appropriate treatment do not constitute deliberate indifference, *Gil v. Reed*, 381 F.3d 649, 663 (7th Cir. 2004); *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996), but Medrano contends that the defendants exercised no medical judgment and refused even to investigate his complaints, *see Collingnon v. Milwaukee County*, 163 F.3d 982, 989 (7th Cir. 1998) (explaining that plaintiff may establish deliberate indifference by showing that "professional's subjective response was so inadequate that it demonstrated an absence of professional judgment, that is, that no minimally competent professional would have so responded under the circumstances.").

Again, at this early stage the district court was required to accept Medrano's allegations as true. And according to Medrano, all of the doctors who saw him knew

about his previous surgeries for serious back and shoulder conditions. Yet despite Medrano's reports that the same pain he felt prior to his surgeries had returned, each doctor failed to take even modest measures to investigate his conditions. Instead, without examination, the doctors summarily prescribed treatment so inadequate that Medrano suffered prolonged and increasing pain while his conditions worsened. Even Dr. Aguinaldo, who did not have the benefit of Dr. Bergin's assessment, failed to take any steps to diagnose Medrano's conditions before sending him away with instructions to lose weight and take Motrin. Aguinaldo, moreover, took no further action for eleven months, despite knowing that Medrano's condition continued to worsen. *See Greeno v. Daley*, 414 F.3d 645, 654 (7th Cir. 2005) (explaining that factfinder could infer deliberate indifference where doctor knew that inmate's condition had worsened and that treatment was not effective, but nevertheless failed to alter prescribed treatment). And by Medrano's account, Drs. Smith, Doughty, Rice and Funk demonstrated an even greater dereliction of professional judgment because they had the benefit of Dr. Bergin's assessment but completely disregarded that assessment without articulating any reasoned basis for doing so or even conducting their own independent examinations. *See Gil*, 381 F.3d at 663-64 (explaining that prison doctor's failure to follow directions of outside specialist raises inference of deliberate indifference); *Jones v. Simek,* 193 F.3d 485, 490-91 (7th Cir. 1999) (same). Further, the defendants did more than refuse to investigate, diagnose, or treat Medrano's conditions; they also stopped prescriptions authorized by other physicians without explanation or, in the case of Drs. Doughty and Rice, with the explanation that no inmate at Menard gets those drugs whether indicated or not. *See Gil*, 381 F.3d at 663 n.3 (reserving decision on question "whether the government or a prison doctor may avoid liability for deliberate indifference by seeking shelter behind an inadequate formulary" of authorized drugs); *Walker v. Benjamin*, 293 F.3d 1030, 1040 (7th Cir. 2002) (holding that validity of prison doctor's stated explanation for refusing to dispense narcotic pain reliever prescribed by outside physician was question for jury to decide). Medrano's allegations, then, easily state a claim against the five doctors who are the focus of this appeal.

Accordingly, the judgment is VACATED to the extent it dismisses Medrano's claims against Drs. Aguinaldo, Doughty, Rice, Smith and Funk, and the case is REMANDED for further proceedings in accordance with this decision. Circuit Rule 36 shall apply on remand.