UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued October 18, 2005
Decided February 24, 2006

**Before**

Hon. RICHARD A. POSNER, *Circuit Judge*

Hon. MICHAEL S. KANNE, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 04-3823

| | |
|---|---|
| NATHAN HALEY,<br>    *Plaintiff-Appellant,*<br><br>    *v.*<br><br>DR. ADRIAN FEINERMAN<br>and DR. JAMES KRIEG,<br>    *Defendants-Appellees.* | Appeal from the United States District Court for the Southern District of Illinois<br><br>No. 03:01-CV-574-WDS<br><br>William D. Stiehl,<br>*Judge.* |

**O R D E R**

Nathan Haley brought suit under 42 U.S.C. § 1983 against two prison doctors alleging that their deliberate indifference to his broken arm necessitated surgery to re-break the arm and free a compressed nerve. The district court granted summary judgment in favor of both doctors because it found no evidence that the doctors were indifferent or disregarded Haley's injury. Haley appeals arguing that the district court improperly weighed the evidence. We affirm the district court's judgment as to both defendants.

On August 6, 2000, Haley broke his upper arm while playing touch football with other inmates at Menard Correctional Center. Defendant Dr. James Krieg, a doctor who worked in the prison infirmary, examined an x-ray of Haley's arm the

next day and observed that the bone was offset by two centimeters, and he treated it with a "hanging cast" that allows gravity to pull the bones into alignment. A week after the first examination, Dr. Krieg saw Haley again and noted that the bone was still misaligned by one centimeter and that Haley complained his hand was numb. Defendant Dr. Adrian Feinerman, Menard's medical director, reviewed Dr. Krieg's notes two weeks after the injury occurred and called Dr. Jose Ramon, an orthopedist, to discuss the fracture. They agreed, based on Dr. Krieg's notes, that the injury was a routine fracture and that any numbness was probably due to a bruise. Dr. Ramon recommended using a sling in addition to the hanging cast to help reduce movement. Haley remained in the cast for approximately five more weeks. Dr. Krieg continued to examine Haley approximately once a week during this period.

Several days after the cast was removed Haley returned to the infirmary complaining of pain near the fracture. The nurses noted a "deformity" of the left arm and that Haley could not fully extend his arm because of the pain. An x-ray taken a week later revealed that the bone fracture had shifted two centimeters from center. Dr. Krieg recommended that Dr. Feinerman consult with an orthopedist about Haley's injury. A week later (about ten weeks after the accident and two weeks after the cast was removed) Haley met with Dr. Feinerman for the first time to discuss Dr. Krieg's recommendation. Dr. Feinerman made an appointment for Haley to see Dr. Ramon, the orthopedist that Dr. Feinerman had already consulted about Haley's case.

Dr. Ramon examined Haley and recommended either surgery or use of a bone stimulator to treat the bone's faulty union. Although Haley originally chose the bone stimulator, he changed his mind five days later when he learned that he would need to be confined to the infirmary for four weeks. According to Dr. Feinerman's notes in Haley's medical records, Dr. Feinerman again consulted with Dr. Ramon, who changed his recommendation. He now recommended that Haley remain in a sling for another three months with continuous monitoring. The medical records do not explain why Dr. Ramon changed his recommendation.

Approximately one month later–over four months after the injury–Dr. Feinerman examined Haley for the first time and could feel that the fracture was still "unstable," so he scheduled a second visit with Dr. Ramon. Several weeks after that, Haley met with Dr. Ramon, who diagnosed Haley with an entrapped radial nerve and recommended that a neurosurgeon examine Haley to evaluate the injury for a surgery to re-break the arm and release the trapped nerve. Haley was examined by several specialists, and finally underwent surgery four months later–eight months after the initial injury.

Dr. Harvey Mirly, the doctor who performed the surgery, testified in an

affidavit for Haley that there was an obvious deformity when he examined the arm before surgery and that the operation was made more difficult by the degree of "healing" that had occurred since the injury. Dr. Mirly's affidavit did not state that the increased healing or the deformity were the result of poor medical care. Haley continued to complain of pain and numbness for nearly a year after the surgery.

Haley brought this action against Drs. Feinerman and Krieg. The doctors filed a motion for summary judgment in which they argued, as relevant here, that their actions refute Haley's claim of deliberate indifference because Haley underwent extensive medical treatment, was allowed to see a specialist, and that the doctors followed the specialist's advice. The district court agreed that Haley received "comprehensive and ongoing care" for his injury, and that the allegations "do not approach" a constitutional violation.

A district court's entry of summary judgment is reviewed *de novo* with facts read in a light most favorable to the non-moving party. *Green v. Butler*, 420 F.3d 689, 694 (7th Cir. 2005). To succeed on an Eighth Amendment claim, the prisoner must demonstrate that the defendants were deliberately indifferent to a serious medical condition. *Farmer*, 511 U.S. at 837; *Pierson v. Hartley*, 391 F.3d 898, 902 (7th Cir. 2004). Deliberate indifference is established when the plaintiff shows that the medical condition from which he suffered is objectively serious and that responsible prison officials knew of, but disregarded, the need for treatment. *Id.*

The parties do not dispute that Haley suffered a serious medical condition. The issue rather is whether the district court properly applied the subjective test under *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Haley contends that the doctors were aware that nerve damage was possible and that it could cause pain and numbness, but ignored the risk and continued treatments that they knew were ineffective. Moreover, he contends that because they pursued this course of action, he required surgery to correct the improperly healed bone and suffered unnecessary pain.

Haley believes this case is analogous to *Sherrod v. Lingle*, 223 F.3d 605 (7th Cir. 2000), in which the court found that the prison medical staff showed deliberate indifference to an inmate's complaints of pain, which turned out to be the result of an inflamed appendix. In *Sherrod*, the prisoner went to the infirmary complaining of abdominal pain; the nurse gave him an enema and aspirin, both of which proved ineffective. *Id.* at 608. The prisoner continued to complain of abdominal pain along with other symptoms that the nurses recognized were consistent with appendicitis, but he was never allowed to go to the hospital. *Id.* at 608-09. Eventually the appendix burst. *Id.* We held that the prisoner was not required to show that he was "literally ignored" by the medical staff. *Id.* at 610-12. He only needed to

demonstrate that prison officials knew there was an excessive medical risk and disregarded that risk. *Id*.

Haley argues that, like the doctors in *Sherrod*, his doctors knew of the risk of a serious medical condition–in this case a trapped nerve and a faulty union of the bone–but did not take appropriate steps to correct the deformation. He contends that treating the broken arm with a hanging cast, Motrin, and a sling was equivalent to treating appendicitis with an enema and aspirin. As in *Sherrod*, the doctors' regular treatments failed to focus on a problem that ultimately developed into a more serious (and painful) medical condition.

Haley attempts to appeal to common sense because the doctors must have been deliberately indifferent if it took them eight months to determine that a broken arm was not healing correctly, but he has not supplied any medical evidence to support his position. Haley has the burden to designate specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Fisher v. Lovejoy*, 414 F.3d 659, 661 (7th Cir. 2005). Doctors Feinerman and Krieg have offered the only evidence that addresses the proper medical standards in this case. Haley simply has not provided evidence that creates a material issue of whether the doctors were deliberately indifferent.

Haley complains that the eight-month delay between his injury and the surgery in itself demonstrates deliberate indifference. But the only delay that could be deemed unreasonable was the time between Dr. Ramon's second recommendation and the surgery that took place four months later (eight months after the injury) because by then Dr. Feinerman was certainly aware of a serious medical condition–the trapped nerve and misaligned bone–and the delay in treatment may have been needless. And Dr. Mirly's affidavit established that the delay caused unnecessary "healing," which resulted in a more difficult surgery. *See Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996) ("[A]n inmate who complains that delay in medical treatment rose to constitutional violation must place *verifying medical evidence* in the record to establish the detrimental effect of delay in medical treatment to succeed." (emphasis in original) (quoting *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir. 1995)).

But the primary reason for this delay was that Haley was being evaluated in preparation for surgery. During these four months, Feinerman scheduled examinations by a neurosurgeon and another doctor who performed additional tests that were recommended by the neurosurgeon. Dr. Mirly also examined the arm prior to the surgery. Prisoners are not entitled to the best possible care, only reasonable measures to meet a substantial risk of serious harm; we do not believe this delay rose to the level of deliberate indifference. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

To establish that Drs. Feinerman and Krieg were deliberately indifferent Haley must demonstrate that they failed to act despite the knowledge of a substantial risk of serious harm. *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002). Haley points to Dr. Mirly's affidavit stating that there was "an obvious deformity about the left humerus" at the time he operated on it as evidence that Drs. Feinerman and Krieg should have been aware of a substantial risk. Haley also points to Dr. Krieg's notes early in the treatment stating that there was an "ulnar neuropathy" as evidence that he knew the nerve was going to become trapped.

Neither Dr. Mirly's affidavit nor Dr. Krieg's notes support Haley's position. The fact that the deformity was obvious when Dr. Mirly operated on it does not support the inference that Haley was improperly treated. Similarly, Haley has not supplied evidence that the possible nerve damage that Dr. Krieg noted made a trapped nerve the obvious and inevitable result. All the evidence shows is that Dr. Krieg exercised his medical judgment to determine that a hanging cast would allow the arm to heal properly. *Cole v. Fromm*, 94 F.3d 254, 260-61 (7th Cir. 1996) (rejecting argument that medical staff must take precautions against all possible risks). Moreover, Dr. Krieg's medical judgment was fully supported by Dr. Ramon–the orthopedic specialist. Haley produces no evidence that Drs. Feinerman or Krieg failed to respond to an obvious injury, which is the standard required to constitute deliberate indifference. *Farmer,* 511 U.S. at 837; *Pierson*, 391 F.3d at 902.

Haley also argues that there was no evidence that Dr. Feinerman consulted with Dr. Ramon after Haley chose not to use the bone stimulator. We have held that failing to follow specialists' advice can be cruel and unusual. *Jones v. Simek*, 193 F.3d 485, 490 (7th Cir. 1999). But Haley's medical record includes Dr. Feinerman's notes stating that Dr. Ramon recommended that Haley remain in a sling with follow-up monitoring. Although it is not clear from the record why Dr. Ramon changed his original recommendation, Haley did not supply any evidence to contradict the medical record. Fed. R. Civ. P. 56(e); *Walker v. Shansky*, 28 F.3d 666, 670-71 (7th Cir. 1994). Haley cannot fault Dr. Feinerman for following the recommendation of a specialist. *Id.*

We AFFIRM the district court's grant of summary judgment in favor of the doctors.