**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 27, 2009[*]
Decided June 24, 2009

**Before**

FRANK H. EASTERBROOK, *Chief Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 08-2549

| | |
|---|---|
| PHAROAH V. MORRIS, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Eastern District of Wisconsin. |
| *v.* | No. 05-C-458 |
| LETITIA LEY, et al., | William C. Griesbach, |
| *Defendants-Appellees.* | *Judge.* |

**O R D E R**

Wisconsin inmate Pharoah Morris brought this action under 42 U.S.C. § 1983, claiming among other things that prison officials violated his Eighth Amendment rights by failing to protect him from attack by another prisoner and by placing him in a feces-encrusted cell. The court granted summary judgment for the defendants, and Morris appealed. We affirm in part and vacate in part.

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2).

We recount the facts in a light most favorable to Morris. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). While he was imprisoned at Waupun Correctional Institution, Morris learned that he was to be transferred to the same cellblock as another inmate who had attacked him two and a half years earlier (when both were housed at a different institution) and who now threatened to kill him. Morris expressed his fears to the prison psychologist, Letitia Ley, but Morris did not know the inmate's name (he knew only the nickname, Cooney). Ley contacted other staff members, but none knew of any inmate called Cooney. Without the inmate's name, Ley declined to fill out a request for security to evaluate whether the two men should be separated. Morris was eventually transferred, and afterwards he repeatedly relayed his concerns about his safety to two security officers, Thomas Core and Douglas Knapp, whom he asked for help in locating the conduct report from the earlier fight in order to learn the other inmate's name. Core and Knapp ignored his pleas.

Morris tried to steer clear of danger by remaining in his cell whenever possible, but about a month after the transfer, he was assaulted in the shower by his former attacker, whose name he learned was Larry Wilson. Wilson beat Morris on the head, knocked him to the ground, and then kicked him in the mouth, chest, and face. Morris suffered a "busted and swollen" mouth and a swollen eye, and later experienced headaches.

After the attack, Morris was transferred to Columbia Correctional Institution, another Wisconsin facility, where he was housed for ten days in a cell that was covered with human feces. Neither side disputes that a prior occupant had smeared feces in the cell and that the cell was powerwashed after his departure. Morris asserted, however, that the cleaning was inadequate, that his cell reeked of human waste, and that excrement was smeared on the light fixture and cell door—including the trap door through which he received his meals. Despite his complaints to members of the prison staff, the only relief he received was some cleaning agent that an officer had sprayed on some toilet paper. A grievance he filed about the feces was rejected for procedural reasons and went unanswered.

After returning to Waupun, Morris sued several Waupun prison officials, including Ley, her supervisor, Core, and Knapp—all of whom, he believes, failed to protect him from the attack. He also sued Mark Issacson, Timothy Douma, Timothy Higbee, Curtis Delong, Janel Nickel, and Andrea Nelson, prison officials at Columbia who, he said, ignored his complaints about the horrid conditions in his cell.

The district court granted summary judgment for the defendants on all claims. Regarding the failure-to-protect claim, the court concluded that Morris failed to show that the defendants knew he was at substantial risk of serious harm. Although Morris pointed

to the earlier conduct report concerning the fight with Wilson, the court found the report inconclusive because it (1) did not specify who started the fight and (2) noted that Morris had to be restrained. The court also found the record bereft of evidence that Morris was particularly vulnerable, that Wilson had a predatory nature, or that the injuries Morris sustained in the fight were objectively serious. The court went on to conclude that Ley could not have acted with deliberate indifference to Morris's safety because she responded reasonably to Morris's concerns. Finally, the court found that Ley's supervisor never had contact with Morris and could not be liable under the doctrine of respondeat superior.

As for the conditions-of-confinement claim, the court concluded that Morris failed to produce sufficient evidence confirming the presence of human feces in his cell. The court noted that Morris's own evidence established that the cell was powerwashed before his arrival and that Morris did not complain of feces in any of the three grievances he filed while at Columbia. And even if feces were smeared in the cell, the court added, there was no Eighth Amendment violation because Morris had cleaning supplies—a face cloth, toilet paper, running water from a sink, and at one point some cleaning agent.

On appeal, Morris raises a litany of arguments, but his essential challenges focus on the court's rejection of his failure-to-protect and his conditions-of-confinement claims. As to the failure-to-protect claim, he basically takes issue with the court's conclusion that the defendants were not aware of a sufficiently serious threat. He contends that his affidavit—stating that he told Ley and the security officers that another inmate threatened to kill him—is sufficient to call into question whether they knew of a substantial risk to his safety.

To prevail on his failure-to-protect claim, Morris would have to show that being housed in the same cellblock as Wilson posed an excessive risk to his safety and that the defendants were deliberately indifferent to the risk. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Dale v. Potson*, 548 F.3d 563, 569 (7th Cir. 2008). However, a general risk of violence is not enough, for prisons are inherently dangerous places. *See Brown v. Budz*, 398 F.3d 904, 909 (7th Cir. 2005). Instead, Morris must show a tangible threat to his safety or well-being. *See Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008). Additionally, to prove deliberate indifference, Morris must show that the defendants were subjectively aware of the risk, yet failed to take reasonable measures to prevent it. *See Farmer*, 511 U.S. at 844; *Borello v. Allison*, 446 F.3d 742, 747 (7th Cir. 2008). "A prisoner normally proves actual knowledge of impending harm by showing that he complained to officials about a specific threat to his safety." *McGill v. Duckworth*, 944 F.2d 344, 359 (7th Cir. 1991).

Here, Morris has set forth evidence showing a tangible threat to his safety—namely his affidavit stating that Wilson threatened to kill him. In addition, Morris can point to

Ley's notes from her counseling session with him in which he expressed his fears of harm, as well as the conduct report from the earlier fight that confirms the bad blood between the two men. Morris put forth evidence that he was about to be transferred to the same cellblock as his former attacker, and thus showed that contact with Wilson was likely.

Furthermore, Morris detailed in his affidavit the steps he took to inform Core and Knapp that Wilson had threatened to kill him. He contended that he spoke directly to both men, told them about the threat, and asked them to find out the other inmate's name from the conduct report of the earlier fight. Additionally, he said that he filed written requests with them, repeating what he had told them in person. Core and Knapp deny that Morris ever told them about the threat, but their denial merely creates a disputed issue that may not be resolved on summary judgment. *See Holmes v. Vill. of Hoffman Estate*, 511 F.3d 673, 680 (7th Cir. 2007). The grant of summary judgment in favor of Core and Knapp must therefore be vacated.

We agree, however, that summary judgment was properly granted on the claims against Ley and her supervisor. The record shows that Ley's response to Morris's plight was not one of deliberate indifference: she tried to learn the inmate's name from staff on the cellblock; she told Morris that she could not help him unless he learned the other inmate's name; and in response to a later, unrelated request from Morris, she advised him again to contact a security officer if he still feared the inmate whose name he did not know. For similar reasons, Ley's supervisor, who only approved Ley's actions and had no direct contact with Morris, could not be held liable for any of the events in this case. *See Ashcroft v. Iqbal*, No. 07-1015, 2009 WL 1361536, at * 11-*12 (U.S. May 18, 2009).

As for the conditions-of-confinement claim, Morris asserts that the district court erred by disregarding his affidavit that said there were feces in his cell. Morris's affidavit stated that his cell smelled of human waste, a stench so overpowering that he could not sleep and felt sick. He asserted that he saw "smeared feces all over the inside of [his] cell door including the part where [he] receives all of [his] meals, as well as all over the light fixture in that cell."

Although the Constitution does not mandate comfortable prisons, prisoners have the right to "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Life's necessities include shelter, heat, clothing, sanitation, and hygiene items. *See Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). But prison conditions do not violate the Eighth Amendment unless there is a sufficiently serious deprivation and the defendants were deliberately indifferent, i.e., they were aware of the conditions but failed to take reasonable measures to abate them. *See Wilson v. Seiter*, 501 U.S. 294, 299, 303 (1991). For example, we recently overturned a grant of summary judgment when the plaintiff was

housed in a cell that among other things was flooded with water and had walls smeared with blood and feces. *See Vinning-El v. Long*, 482 F.3d 923, 924 (7th Cir. 2007) (citing cases).

Here the facts conflict as to whether the prevalence of human waste in Morris's cell reached such a point of inhabitability as to deprive him of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347. His affidavit sets forth sufficient detail to suggest that the cell was inadequately cleaned because the feces were so widely smeared and the stench so overpowering as to make his cell unlivable. He testified at deposition, furthermore, that the feces covered the cell door, including the window and trap door for food trays, and that the "holes" in the door (through which he communicated with people outside the cell) were filled with feces. The court credited the defendants' evidence and concluded that no rational juror could find that there were feces in the cell, but Morris's affidavit and deposition testimony are sufficient to create a disputed issue of fact. *See Payne v. Pauley*, 337 F.3d 767, 770-71 (7th Cir. 2003). Contrary to the court's suggestion, this is not a situation like *Scott v. Harris*, 550 U.S. 372, 380-81 (2007), in which "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it." Similarly, we do not assume as the court did that having access to running water and a towel was sufficient to remedy the problem.

We have examined the other issues Morris had raised on appeal and conclude that they are without merit. Accordingly, the judgment of the district court is VACATED as to the conditions-of-confinement claim and the failure-to-protect claim as to defendants Core and Knapp and is AFFIRMED in all other respects.